Cheshire,
No. 5543.

DORIS W. FERGUSON

*v.*

KEENE.

Argued June 6, 1967.
Decided January 30, 1968.

*Howard B. Lane* ( by brief and orally ), for the plaintiff.

*Eric J. Kromphold, Jr.,* city solicitor ( by brief and orally ), for the defendant.

DUNCAN, J.  The defendant's airport, known as the Dillant-Hopkins Airport, was established in 1942. In 1947, the plaintiff purchased certain real estate, including her residence, located southerly of the north-south runway of the airport. In 1956 the city took a part of the westerly portion of plaintiff's land in order to lengthen the runway, which in 1959 and 1962 was

extended a distance of a thousand feet, so that its southerly end is now located a few hundred feet west of the plaintiff's house.

The writ alleges that the use of a "warm-up apron" located opposite the plaintiff's house resulted in 1963 and 1964 in such noise and vibration as to cause windows in the house to break, and to make conversation or sleep in the house impossible and life therein generally "unbearable." The writ alleges that this use of the airport "constitutes a taking and appropriation" of the plaintiff's property for which the defendant has refused to compensate her.

It is the settled law of this jurisdiction that a municipality, like any property owner, is bound to use its property in a reasonable manner, and is liable if its use results in a private nuisance. *O'Brien* v. *Derry,* 73 N. H. 198, 204; *Proulx* v. *Keene,* 102 N. H. 427, 430-431; *Webb* v. *Rye,* 108 N. H. 147, 150. The defendant contends however that no taking of the plaintiff's property can properly be alleged, since she admits that the flight path of aircraft does not cross it, and damage alone without an actual taking requires no compensation. *United States* v. *Willow River Co.,* 324 U. S. 499, 510. The defendant further argues that its use of the airport is "proper," and that subjection of airports to liability for claims such as this would unduly impede the progress of air transportation in the state.

The plaintiff asserts that the allegations of its writ include all of the classic elements of nuisance ( Restatement, Torts, *s.* 822; see *McKinney* v. *Riley,* 105 N. H. 249, 251 ) and also that the defendant's conduct of the airport gives rise to a cause of action for "inverse condemnation," even though no overflights occur. *Thornburg* v. *Port of Portland,* 233 Ore. 178; *Martin* v. *Port of Seattle,* 64 Wash. ( 2d ) 309. See *Charlotte* v. *Spratt,* 263 N. C. 656; *Jacksonville* v. *Schumann,* ( Fla. App. ) 167 So. 2d 95; *State* v. *Columbus,* 3 Ohio St. 2d 154.

Inverse condemnation is a term used to describe "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *Jacksonville* v. *Schumann, supra,* 98; *Charlotte* v. *Spratt,* 263 N. C. 656, *supra,* 663. See *Hillsborough County Aviation Auth.* v. *Benitez,* ( Fla. App. ) 200 So. 2d 194. While in this jurisdiction the doctrine may not have been adverted to under that name, it is not

unknown to our jurisprudence. *Eaton* v. *B.C. & M. R. R.,* 51 N. H. 504, 510-516. See Van Alstyne, Statutory Modification of Inverse Condemnation, 19 Stanford L. Rev. 727, 738-768; Mandelker, Inverse Condemnation: The Constitutional Limits of Public Responsibility, 1966 Wis. L. Rev. 3, 18-19.

Pertinent cases decided by the United States Supreme Court have not gone beyond the point of holding that there may be recovery in inverse condemnation for damages occasioned by direct flights of aircraft over a claimant's property. *United States* v. *Causby,* 328 U. S. 256; *Griggs* v. *Allegheny County,* 369 U. S. 84. As was pointed out in Dunham, Griggs v. Allegheny County in Perspective: Thirty Years of Supreme Court Expropriation Law, 1962 Supreme Court Review 63: "The question whether those [claimants] adjacent to airports, but not in any flight path, should be compensated thus remains an open one so far as the Supreme Court decisions are concerned. But the logic of *Causby* and its idea of fairness would seem to require compensation even where the planes do not fly directly over the objector's land." *Id.,* 88.

However, in *Batten* v. *United States,* 306 F. 2d 580 (10th Cir. 1962) the Court of Appeals declined to extend the doctrine to a case where overflights did not occur, relying upon *United States* v. *Willow River Co.,* 324 U. S. 499, *supra,* and the proposition that the Federal Constitution requires compensation for a "taking" only. This decision the United States Supreme Court declined to review on certiorari. *Batten* v. *United States,* 371 U. S. 955.

The courts of at least two states, proceeding under their own constitutions, have permitted recovery in cases where overflights were not involved. *Thornburg* v. *Port of Portland,* 233 Ore. 178, *supra; Martin* v. *Port of Seattle,* 64 Wash. 2d 309, *supra.* See also, *Thornburg* v. *Port of Portland,* 244 Ore. 69; 2 Nichols on Eminent Domain (3d *ed.*) *s.* 5.781; Annot. 77 A.L.R. 2d 1355. They do not agree however upon the standards to be applied in determining when a taking has occurred, and the cases have been critically received by some commentators. See Spater, Noise and the Law, 63 Mich. L. Rev. 1373, 1404-1406 (1965). Moreover the Constitution of the State of Washington requires compensation for a "damaging" of property as well as a "taking," in this respect differing from both the Constitution of the United States and that of New Hampshire. See, N. H. *Const., Pt.* I, *Art.* 12th.

"Since there is hardly a government act which could not cause

someone substantial damage, an arbitrary boundary line must be drawn between compensable and non-compensable injury." Spater, *supra.,* 1385-1386. Under the Federal Constitution, the line has been drawn at compensation for a taking of property. "The Fifth Amendment . . . requires just compensation where private property is taken for public use . . . [but] does not undertake . . . to socialize all losses . . . . " *United States* v. *Willow River Co.,* 324 U. S. 499, *supra,* 502. See *Batten* v. *United States,* 306 F. 2d 580, *supra.* Thus compensation is limited to recovery for "direct and immediate interference with enjoyment and use" by frequent low-level overflights. *United States* v. *Causby,* 328 U. S. 256, *supra.* See, *Avery* v. *United States,* 330 F. 2d 640 ( Ct. Cl., 1964 ); *Hodges Industries* v. *United States,* 355 F. 2d 592 ( Ct. Cl., 1966 ). See also, Note, Airplane Noise, 65 Col. L. Rev. 1428, 1431, 1432.

A genuine distinction may reasonably be thought to exist between the nature of the injury suffered by the owner whose land is subjected to direct overflight, and that suffered by his neighbor whose land is not beneath the flight path. Only the former has lost the use of the airspace above his land, and he is subjected to risks of physical damage and injury not shared by the latter. Spater, *supra,* 1394-1395.

While our Constitution may not preclude application of the doctrine of inverse condemnation to cases not involving overflights ( See *Eaton* v. *B. C. & M. R. R.,* 51 N. H. 504, *supra* ), the "difficult questions which have arisen from attempts to define the requisite elements of the taking bear witness to the unsuitability of dealing with the problems of airplane noise by enforcing constitutionally-based claims." Note, 65 Col. L. Rev. 1428, *supra,* 1447. In holding that where no property is appropriated there may be no recovery for consequential damage due to noise, smoke, and vibrations incident to proximity to a railroad, in *Richards* v. *Washington Terminal Co.,* 233 U. S. 546, 555, the Court said: "The doctrine has become so well established that it amounts to a rule of property, and should be modified, if at all, only by the law-making power."

To what extent the nuisance of which the plaintiff complains is essential to the public use of the defendant's airport is a question which is not determinable at this stage of this litigation. The question whether a defendant in circumstances such as these should

be compelled by inverse condemnation to acquire an "easement" and compensate the plaintiff therefor ( See *Causby* v. *United States,* 75 Fed. Supp. 262 ( Ct. Cl. 1948 )) presents issues of social policy which might well be the subject of legislative study and appropriate enactment. See Van Alstyne, Statutory Modification of Inverse Condemnation, 19 Stanford L. Rev. 727 *supra,* 738 ( 1967 ).

For purposes of this case, we hold that the plaintiff's writ and declaration fail to state a cause of action in inverse condemnation for want of any claim of overflights, but that a cause of action in nuisance is sufficiently alleged.

*Exception overruled; remanded.*

GRIMES, J., dissented; the others concurred.

GRIMES, J., *dissenting:* The plaintiff's writ alleges that "the noise from the planes 'warming up' for take off, make such a great amount of noise that it is impossible for the people in the house to converse or talk on the telephone, the house vibrates and the glass in the windows shake and that more than 20 panes of glass have been broken by said vibration in the winter of 1963-1964, that it is often times impossible to sleep and there is no peace or quiet in their home and that life has become unbearable because of said noise."

The majority of the court says this declaration does not set forth a cause of action based on inverse condemnation. I disagree.

Our court long ago decided that in our state at least, the term "property" refers to "the right of any person to possess, use, enjoy and dispose of a thing" and is not limited to the thing itself, and that a person's property is "taken" for public use so as to entitle him to "just compensation" under our Constitution when a physical interference substantially subverts one of these rights even though the thing itself is not taken. *Eaton* v. *B. C. & M. RR.,* 51 N. H. 504, 511 ( 1872 ). The majority opinion recognizes that the *Eaton* case applied the principle of what is now called "inverse condemnation."

The *Eaton* case also holds that the plaintiff may recover whether he is being "wholly deprived of the use of his land, or only partially deprived of it." *Id.,* 512. Also under *Eaton,* the

plaintiff's right of recovery is not defeated because the defendant's activities are "proper." *Id.*, 515, 516.

Surely the sound waves invading the plaintiff's property in the case before us constitute as much of a physical interference with his use as the water which occasionally entered upon the plaintiff's land in the *Eaton* case. But in any event I think a distinction based upon the nature of the invasion rather than the effect of it is unjustified. *Batten* v. *United States,* 306 F. 2d 580, 585 (10th Cir. 1962) *dissenting* opinion. Even the majority in the *Batten* case recognizes this but would restrict recovery to cases involving complete deprivation of use, a doctrine which was rejected in *Eaton.*

The court cites *Batten* v. *United States, supra,* but in my judgment our *Eaton* case answers every proposition upon which the majority opinion in *Batten* is based. In addition, *Eaton* establishes a right in the plaintiff under our own constitution quite independent of the Constitution of the United States upon which Mr. Batten relied.

The declaration in the case at bar alleges that the sound waves from the planes invade plaintiff's premises to the extent that conversation, telephoning and sleep are not only difficult but impossible and also that they cause actual physical damage to the house itself. Twenty window panes broken in one winter is no trivial interference and we have no way of knowing without evidence what the long-range effect of the vibration and shaking of the house will have upon it. Certainly the declaration alleges more than mere inconvenience or annoyance for which I agree no recovery can be had.

Here we have allegations of interference with use and enjoyment which unquestionably is "sufficiently direct, sufficiently peculiar, and of sufficient magnitude to cause us to conclude that fairness and justice, as between the State and the citizen, requires the burden imposed to be borne by the public and not by the individual alone." *Batten* v. *United States, supra* (*Murrah,* Chief Judge, *dissenting*) 587.

The difficulty in determining where to draw the line between such a substantial interference with use as to constitute a taking and that which does not should not deter us from permitting recovery in a clear case. *Eaton* v. *B. C. & M. RR., supra,* 521. Nor should any policy consideration relating to the public need for airports affect our decision. I agree with Judge *Smith* when

ninety-six years ago he said that great public convenience and benefit "may afford an excellent reason for taking the plaintiff's land in the constitutional manner, but not for taking it without compensation. If the work is one of great public benefit, the public can afford to pay for it." *Eaton* v. *B. C. & M. RR., supra,* 518.

The plaintiff's right to compensation cannot be made to depend upon legislative benevolence, as the majority suggest, as it is a right to which he is entitled under the Constitution. *Eaton* v. *B. C. & M. RR., supra,* 510, 511; *N. H. Water Resources Board* v. *Pera,* 108 N. H. 18.

I am unimpressed with the rationale of those cases which confine inverse condemnation to overflights. A person's property rights can be damaged as greatly by sound waves traveling horizontally as by those traveling vertically, and to draw a distinction is to ignore reality.

We are dealing here with an important and fundamental individual right, the roots of which reach back to Magna Carta. It is one which deserves to be stoutly defended and liberally construed. It is one which we should not deny to this plaintiff because the means by which her property was taken was neither known to nor foreseen by the Barons of England or the Framers of our Constitution.

The court while denying the constitutional right has at least recognized that the plaintiff has set forth a cause of action based on nuisance. This I think is a poor substitute from the standpoint of both parties.