Merrimack
No. 79-059

W. A. SUNDELL & *a.*

v.

TOWN OF NEW LONDON

December 12, 1979

*Orr & Reno*, of Concord (*William L. Chapman* orally), for the plaintiffs.

*Ransmeier & Spellman*, of Concord (*John C. Ransmeier* orally), for the defendant.

GRIMES, C.J. The issues involved in this case include whether riparian and littoral owners may recover in nuisance or in inverse condemnation for injury to their rights by pollution-caused algae blooms and whether the statute of limitations and prescription defenses should have been submitted to the jury. We uphold the trial court on all issues.

All but two plaintiffs are littoral owners of property on the shore of Kezar Lake; the other two are riparian owners along Lion Brook, a tributary of Kezar Lake. The defendant operates a sewage treatment plant which discharges nutrient-laden effluent into the brook upstream from the plaintiff riparian owners. The treatment plant was constructed in 1931. From time to time, there have been changes and improvements in the plant, but effluent continued to be discharged into Lion Brook and thence into Kezar Lake.

There was evidence that in 1938 a study of the lake showed it to have a transparency of eleven feet and additional testimony described the clarity and desirability for recreational uses of the lake from the 1920's until the early 1960's. Sometime about the middle 1960's the lake began to develop intense algae blooms which caused the water to become "pea soup" in color, lose transparency, give off foul odors, leave slime on the shore and kill fish, which then wash up onto the shore. Attempts by the New Hampshire Water Supply and Pollution Control Commission to control the situation, although successful for a time, failed and were abandoned.

There was ample evidence that the condition of the lake was caused by the defendant's plant discharging into Lion Brook and this does not appear to be at issue. There was also evidence that the condition was temporary in the sense that if the discharge of effluent into the waters were stopped, the lake would clear itself in about ten years and that this clearing could be accelerated by artificial means.

The trial court submitted the plaintiffs' claims of private nuisance and inverse condemnation to the jury but did not allow the defense of the statute of limitation, ruling instead that the condition in Kezar

Lake was abatable. The court also declined to submit to the jury the defense of prescriptive rights. The jury returned a verdict for the plaintiffs in the amount of $119,580 and defendant's exceptions were transferred by *Brock*, J.

The threshold issue is whether the court erred in not granting the defendant's motions for directed verdicts based on its claim that the plaintiffs cannot recover for damages caused by the reduced enjoyment of the waters of Kezar Lake.

 Kezar Lake is a great pond, and at common law, *Concord Manufacturing Co. v. Robertson*, 66 N.H. 1, 25 A. 718 (1889), and under RSA 271:20 (Supp. 1977), title to its waters vests in the State for public use. The statute provides that no individual shall have or possess any rights or privileges not common to all citizens. Our cases uniformly hold, however, that "littoral owners have rights which are more extensive than those of the public generally." *State v. Stafford Company*, 99 N.H. 92, 105 A.2d 569 (1954). *See also Hoban v. Bucklin*, 88 N.H. 73, 186 A. 8 (1936). These rights, recognized at common law, *State v. Sunapee Dam*, 70 N.H. 458, 50 A. 108 (1900); *Concord Manufacturing Co. v. Robertson*, 66 N.H. 1, 25 A. 718 (1889), constituted property which could not be taken without compensation and were not affected by RSA 271:20. These private rights of littoral owners include but are not necessarily limited to the right to use and occupy the waters adjacent to their shore for a variety of recreational purposes, the right to erect boat houses and to wharf out into the water. *Hoban v. Bucklin supra; State v. Stafford Company supra; Heston v. Ousler*, 119 N.H. 58, 398 A.2d 536 (1979). We have also held that these private littoral rights are incidental property rights which are severable from the shore property itself and may be conveyed separate from the littoral property. *Donaghey v. Croteau*, 119 N.H. 320, 401 A.2d 1081 (1979).

 It is clear, therefore, that although waters of great ponds are public waters, littoral owners nevertheless have private property rights which are separate from, independent of, and more extensive than the public's right. Because these littoral rights are an incident of ownership of shore property, their value is reflected in the fact that shorefront property commonly is substantially more valuable than property otherwise situated. It is for interference with these private littoral rights that the plaintiffs seek damages, not for interference with rights common to the public. We hold that the trial court committed no error by declining to direct verdicts for the defendant based on this claim.

■ The defendant also argues that the trial court erred in not directing a verdict in its favor on the inverse condemnation count because there was no physical invasion of the plaintiffs' shore property. Inverse condemnation occurs when a governmental body takes property in fact but does not formally exercise the power of eminent domain. *Ferguson v. Keene,* 108 N.H. 409, 238 A.2d 1 (1968). It gives rise to a cause of action for compensation. The principle of inverse condemnation was developed in this State over one hundred years ago in *Eaton v. B.C. & M.R.R.,* 51 N.H. 504 (1872), and was recognized by both the majority and the dissent in *Ferguson v. Keene,* 108 N.H. 409, 238 A.2d 1 (1968). The only point of difference in *Ferguson* related to the application of the doctrine to the alleged facts of that case. The view of the majority was that some physical invasion of the plaintiff's airspace by overflights was essential to its application. The defendant, relying on the majority opinion in *Ferguson,* argues that because the waters of the lake are public below the high-water line, there has been no physical invasion of plaintiffs' property and therefore no inverse condemnation.

■■ One of the basic teachings of *Eaton v. B.C. & M.R.R.* is that under our law, "property" refers to the right to "use and enjoy" a thing, and is not limited to the thing itself. 51 N.H. at 511. Governmental action which substantially interferes with, or deprives a person of, the use of his property in whole or in part, may therefore constitute a taking, even if the land itself is not taken. *Id.* The dissent in *Ferguson,* relying heavily on *Eaton,* looked to the effect of the governmental action rather than to the nature of it. It recognized, of course, that the interference must be more than mere inconvenience or annoyance and must be "sufficiently direct, sufficiently peculiar, and of sufficient magnitude to cause us to conclude that fairness and justice, as between the State and the citizen, requires that the burden imposed . . . be borne by the public and not by the individual alone." *Batten v. United States,* 306 F.2d 580, 587 (10th Cir. 1962) (Murrah, C.J., dissenting); *Ferguson v. Keene,* 108 N.H. at 414, 238 A.2d at 5 (dissenting opinion); *see Duffield v. DeKalb County,* 242 Ga. 432, 249 S.E.2d 235 (1978); *Dempsey v. Boys' Club of City of St. Louis, Inc.,* 558 S.W.2d 262 (Mo. App. 1977).

Reliance upon concepts of physical invasion by tangible things has in other fields of the law given way to concern with the effect on individual rights. *See, e.g., Katz v. United States,* 389 U.S. 347 (1967) (fourth amendment protects persons, not places); *accord Gordon v. City of Warren,* 579 F.2d 386 (6th Cir. 1978) (compensation action

against municipal corporation based on fourteenth amendment).

As has already been stated, the plaintiffs, as littoral owners, have rights below the high-water line in front of their property to use the waters for "a panoply of recreational activities." *Heston v. Ousler*, 119 N.H. 58, 62, 398 A.2d 536, 538 (1979). In *Heston* this area was described as "their own water space." It is not disputed that the defendant's effluent-spawned algae invaded these water spaces causing substantial interference with plaintiffs' use of this space for bathing, swimming, boating, and other recreational purposes. There was also evidence that foul odors caused by the algae blooms, together with dead fish cast ashore, drifted across plaintiffs' upland, diminishing their enjoyment of it.

■ Thus the invasion of the plaintiffs' water space by effluent-caused algae blooms is a sufficient physical invasion of their property to satisfy the majority opinion in *Ferguson v. Keene*, 108 N.H. 409, 238 A.2d (1968). Moreover, the noxious gases and odors which invaded their shore property, containing elements not found in clear air, could also be considered sufficiently more tangible than the sound waves rejected as constituting a physical invasion in *Ferguson*.

■ The right to recover for inverse condemnation, however, cannot be made to depend upon the means by which the property is taken. Foul odors invading one's property can surely interfere with an owner's use of his land as much as an invasion by more solid substances. We hold that inverse condemnation results. *See Duffield v. DeKalb County*, 242 Ga. 432, 433–34, 249 S.E.2d 235, 237 (1978). To the extent that *Ferguson v. Keene* is inconsistent with our holding in this case, it is overruled. It therefore was not error for the trial court to deny the motion for directed verdicts on the inverse condemnation count.

■ The defendant argues further that the trial court erred in not submitting to the jury the question whether the town had acquired prescriptive rights in Lion Brook and Kezar Lake and in striking that defense as a matter of law. Rights are acquired by prescription when a use continues for a period of twenty years without significant interruption under a claim of right and is so open and notorious as to give notice of the claim. *Weeks v. Morin*, 85 N.H. 9, 153 A. 471 (1931). Defendant claims that because it has been discharging effluent into Lion Brook and thence into Kezar Lake since 1931, it had acquired a prescriptive right so to do long before plaintiffs' actions were begun.

The fact that the defendant was discharging effluent into Lion Brook for more than twenty years before these actions were begun in

1974 does not end the matter. Plaintiffs' complaint relates to the presence of algae blooms and the resulting problems. Even though effluent has been dumped into the brook and lake since 1931, there is no evidence that algae blooms began to appear until the mid-1960's. Until that time the conduct of the defendant had not interfered with the plaintiffs' use and enjoyment of their littoral rights in any substantial manner. From the mid-1960's on, however, the interference with those rights dramatically changed and the burden upon plaintiffs, negligible and unnoticed before, became substantial.

 This new "burden or material increase" had not run the full period and therefore no prescriptive rights were acquired by the defendant. *Hoban v. Bucklin*, 88 N.H. 73, 88, 186 A. 8, 11 (1936). In such a case, we look to the burden placed upon the property owner, rather than the conduct of the defendant, in determining whether there has been an increase in the burden. A use which casts no burden upon the landowner cannot count in determining the prescriptive period for one which does.

 Thus, even if the defendant had acquired an easement by prescription to discharge effluent into Lion Brook and thence into Kezar Lake, the subsequent development of the algae condition was not within the scope of such a servitude. *See Crocker v. Canaan College*, 110 N.H. 384, 268 A.2d 844 (1970). Accordingly, because the defendant's activity prior to 1954 did not interfere with the property rights upon which the plaintiffs' actions are based, the court properly ruled that the defense of prescription was not available to the defendant.

The town next argues that the trial court erred in striking its statute of limitations defense. It contends that there was evidence presented at trial from which the jury might conclude that the plaintiffs' causes of action arose more than six years prior to the commencement of this suit, and thus would have been time-barred.

 We have recently reiterated that the burden of proving the bar of the statute of limitations rests with the party asserting it. *See Brown v. Mary Hitchcock Memorial Hospital*, 117 N.H. 739, 744, 378 A.2d 1138, 1141 (1977). The rule in this State is that a statute of limitations is a matter of procedure, *see Gordon v. Gordon*, 118 N.H. 356, 379 A.2d 810 (1978), "[t]he interpretation and application [of which] is traditionally within the province of the court in cases of this nature." *Shillady v. Elliot Community Hospital*, 114 N.H. 321, 325, 320 A.2d 637, 639 (1974); *cf. Lakeman v. Lafrance*, 102 N.H. 300, 156

A.2d 123 (1959). Moreover, this court has observed that the applicability of the statute is a determination that "should be made ordinarily at a preliminary hearing in advance of trial ...." *Shillady v. Elliot Community Hospital*, 114 N.H. at 325, 320 A.2d at 639; *see Lepage v. L'Heureux*, 119 N.H. 201, 399 A.2d 977 (1979). Thus, the trial court infringed no substantial right of the defendant in determining the applicability of the statute to the facts of this case by waiting until the evidence was in before making its ruling.

The trial court based its ruling that the statute of limitation did not bar the plaintiffs' actions on its determination that the nuisance or taking was temporary or abatable. In accordance with this view, the trial court instructed the jury that, in the event it found for the plaintiffs on either the nuisance or inverse condemnation count, it could award damages only for injuries sustained during the six years preceding the commencement of the action. Defendant, on the other hand, argues that the jury could have found that the condition of the lake was permanent, and had become so more than six years prior to plaintiffs' filing of their writs, in which event RSA 508:4 would bar their recovery.

In our view, however, the trial court correctly determined that the condition complained of by the plaintiffs constitutes an abatable nuisance for which successive causes of action will lie. The fact that the damage will not stop the instant the town's offending activities cease, but may take ten years before improvement results, does not make the nuisance permanent. By continuing the discharge into the brook and lake, the town is continually causing new damage by prolonging the time before which improvement can begin.

In determining the nature of a plaintiff's remedy in private nuisance, the general rule is that recovery may be had only for past harm. RESTATEMENT (SECOND) OF TORTS § 930, comment *a* (1977). Where the injury complained of is temporary or intermittent, depending on uncertain future conditions, the nuisance is characterized as temporary or abatable and the plaintiff may not recover prospective damages. 58 AM. JUR. 2d *Nuisances* § 116 (1970). Instead, the injured party must bring successive actions to recover for successive injuries, as they occur. *Town of Troy v. Cheshire Rail Road Company*, 23 N.H. 83 (1851); RESTATEMENT (SECOND) OF TORTS § 930, Comment *a*. In each successive action, the plaintiff may recover for all injury sustained during the statutory period prior to the commencement of suit. 58 AM. JUR. 2d *Nuisances* § 132 (1971).

On the other hand, a nuisance may be characterized as permanent when it exists under circumstances that give rise to the presumption that it will continue indefinitely or affect the value of the property permanently, "being at once necessarily productive of all the damage which can ever result from it." 58 AM. JUR. 2d *Nuisances* § 117 (1971). Where the nuisance is so characterized, the plaintiff may recover in one action for all harm sustained, whether past or prospective. *Id.; see Morris v. Ciborowski,* 113 N.H. 563, 311 A.2d 296 (1973). In such a case, the measure of damages becomes the total diminution in the value of the property. *See, e.g., Ferguson v. Keene,* 111 N.H. 222, 279 A.2d 605 (1971), RESTATEMENT (SECOND) OF TORTS § 930, comment *b* (1977). Prospective relief becomes appropriate because of the inadequacy to the injured party of successive suits at law. *Id.; see Town of Troy v. Cheshire Rail Road Co.,* 23 N.H. 83 (1851). Thus, the distinction between abatable and nonabatable nuisances serves to more fully compensate the injured landowner for an interference that is tantamount to a permanent taking, and should not serve to deprive the plaintiffs of any recovery. RESTATEMENT (SECOND) OF TORTS § 930, comment *a* (1977). We conclude that the trial court rightly characterized the condition in Kezar Lake as an abatable nuisance.

Moreover, even if the six-year statute of limitations barred recovery by the plaintiffs on their count sounding in nuisance, the verdict could be sustained on the theory of inverse condemnation alone. The defendant asserts that actions in inverse condemnation should also be governed by the six-year limit of RSA 508:4 (Supp. 1977). We do not agree.

To begin with, the defendant's reliance on our earlier opinion in *Locke v. City of Laconia,* 78 N.H. 79, 97 A. 567 (1916), is misplaced. Rather than standing for the proposition that actions against municipalities for damage to land are personal actions, governed by the six-year period, the court in *Locke* merely assumed, *arguendo*, that such was the case. The real issue before the court was whether a claim for damages arising from a change in grade of a town-maintained road arose at the time of the act complained of, or lay dormant until the aggrieved landowner made a demand upon the town for compensation.

Whatever may be the merits of allowing such actions to be governed by RSA 508:4 (Supp. 1977), we clearly think it inappropriate to apply the six-year period in actions for inverse condemnation. The plaintiffs' right to compensation for such a taking as occurred in the instant case does not depend upon statute or case law but instead

derives from a constitutional imperative. *Sibson v. State*, 111 N.H. 305, 307, 282 A.2d 664, 665 (1971). In *Ackerman v. Port of Seattle*, 55 Wash. 2d 400, 348 P.2d 664 (1960), for example, it was held that an action for a constitutional taking was not barred by any statute of limitations but could be brought at any time before title to the property passed by prescription. *Id.* at 405, 348 P.2d at 667. *See also Krambeck v. City of Gretna*, 198 Neb. 608, 254 N.W.2d 691 (1977); *Brazos River Authority v. City of Graham*, 163 Tex. 167, 354 S.W.2d 99 (1962); *State Highway Com. v. Stumbo*, 222 Or. 62, 352 P.2d 478 (1960). Although there is authority to the contrary, *see* 27 AM. JUR. 2d, *Eminent Domain*, § 498 (1966), and cases cited therein, we believe the better view is to regard actions in inverse condemnation as governed by the statutory period applicable to actions for the recovery of real estate, that is, twenty years. RSA 508:2. Thus, insofar as the trial court here instructed the jury that damages could be recovered only for injury to the plaintiffs' property occurring within six years prior to the commencement of these actions, the defendant cannot complain.

Therefore, assuming that the jury returned its verdict on the nuisance count, it would have found all facts necessary to entitle the plaintiffs to a verdict on the inverse condemnation count. Thus, the general verdict will not be disturbed. *State v. Railroad*, 52 N.H. 528, 560 (1873). *See* cases collected in 89 C.J.S. *Trial* § 505 (1955).

A final contention of the defendant is that the court erred in allowing plaintiffs Rolfe and Avery to recover damages. The town argues that because they purchased their property for investment purposes and had not yet sold them, they had not realized any loss. The court allowed these plaintiffs to introduce evidence of the loss in value of their properties due to the condition of the lake and to recover on the basis of applying prevailing rates of interest to this reduction for the period of the statute of limitations. Defendant argues that because the condition is abatable and that there are in fact plans to eliminate the discharge of effluent altogether, it is possible that by the time the property is sold, there will be no damage and plaintiffs will have received a windfall because they would have suffered no damage and yet they will have recovered damages.

■■ We find no merit in this argument. There was evidence that these plaintiffs have held their property for a much longer time than they would have because of the diminished value. If the condition were permanent and they had sold their property at the reduced value they could have recovered their full loss. They should not be deprived of recovering the cost of holding their property until the temporary nuisance has been abated. The measure of damages allowed by the

court was a fair method of compensating these plaintiffs for the loss of use of their property. *See Capitol Plumbing & Heating Supply Co. v. State*, 116 N.H. 513, 363 A.2d 199 (1976); *Sargent v. Janvrin*, 109 N.H. 66, 242 A.2d 73 (1968).

*Exceptions overruled.*

DOUGLAS, BROCK, and KING, JJ., did not sit; LAMPRON, C.J., retired, sat pursuant to RSA 490:3; the others concurred.