**TRANSGO, INC., Plaintiff–Appellee,**

v.

**AJAC TRANSMISSION PARTS CORPORATION, Defendant,**

**and**

**Fairbanks America, Inc.; Fairbanks Racing Automatics; and Joseph Lupo, Defendants–Appellants.**

No. 89–55551.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 7, 1990.

Decided Aug. 20, 1990.

Gene S. Winter, St. Onge, Steward, Johnston & Reens, Stamford, Conn., for defendants-appellants.

Michael L. Younger, El Monte, Cal., for plaintiff-appellee.

Before BROWNING and PREGERSON, Circuit Judges, and McKIBBEN,* District Judge.

PREGERSON, Circuit Judge:

Appellant auto part manufacturers (hereinafter collectively referred to as "Fairbanks") appeal the district court's denial of their Fed.R.Civ.P. 60(b)(5) motion to modify post-trial permanent injunctions entered against them. They allege that the injunctions restrict their freedom of commercial speech under the First Amendment and are inconsistent with Lanham Act provisions. Because we find that Fairbanks does not meet the requirements for modification of injunctions under Fed.R.Civ.P. 60(b)(5), we affirm the district court's order.

## FACTS

The parties in this case are competitors in the automatic transmission auto parts business. *See Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1009–13 (9th Cir.1985) (giving detailed facts regarding the transmission trade and the histories of the parties' businesses), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). Following a trial on plaintiff Transgo's claims of trademark and copyright infringement, in which a jury found that defendants, including Fairbanks, had infringed plaintiff's trademark "Shift Kit" and copyrighted instructions, the district court permanently enjoined defendants' use of the term "Shift Kit" in connection with the "selling, marketing, advertising, promoting and/or distributing" of automatic transmission parts. The defendants were also prohibited from using

any name likely to cause customer confusion with the "Shift Kit" product, as well as the letters "SK," in connection with their automatic transmission products.

Defendants were required to send a copy of the Final Judgment and Injunction to their sales representatives, distributors, customers and accounts to inform them of the injunction's terms. Moreover, the injunction required the defendants to recall all products and materials which the jury found to infringe on the plaintiff's trademark and copyright and to deliver the goods to the plaintiffs within three weeks "for purposes of destruction or disposal."

The district court rendered its final judgment and injunction on July 28, 1980. The following January, the court entered a civil contempt order and a second injunction against defendant Fairbanks for "selling, marketing, advertising, promoting and distributing" valve body components and automatic transmission parts under the name "SHIFT TIMING KIT" and using the initials "STK." The second injunction prohibited defendants from using the words "SHIFT" and "KIT" in combination with other words in connection with their automatic transmission parts.

In December 1981, the district court entered another civil contempt order against Fairbanks for use of the words "Shift Kit" in connection with the marketing and sale of automatic transmission parts.

The judgment, the two injunctions, and the contempt orders were affirmed on appeal. *Id.* at 1001. In August 1987, Transgo brought an unsuccessful motion for contempt against Fairbanks for violating the injunctions in the course of phone solicitations. At that contempt proceeding, Fairbanks submitted evidence tending to show that the term "Shift Kit" had become genericized in the transmission trade.

In June 1988, defendants moved to modify the permanent injunctions "to permit Fairbanks to lawfully use the descriptive term 'shift kit' in a purely descriptive, fair,

---

* The Hon. Howard D. McKibben, United States District Judge for the District of Nevada, sitting by designation.

non-confusing manner." The district court denied the defendants' motion to modify the injunctions. Fairbanks appeals the order.

## DISCUSSION

■ Motions for modification under Fed. R.Civ.P. 60(b) are reviewed for abuse of discretion. *Money Store, Inc. v. Harriscorp Fin., Inc.,* 885 F.2d 369, 372 (7th Cir.1989). Rule 60(b)(5) represents a codification of "preexisting law, recognizing the inherent power of a court sitting in equity to modify its decrees prospectively to achieve equity." Jost, *From Swift to Stotts and Beyond: Modification of Injunctions in the Federal Courts,* 64 Tex.L. Rev. 1101, 1105 (1986) [hereinafter Jost]. The leading precedent under preexisting law is Justice Cardozo's opinion in *United States v. Swift & Co.,* still the dominant case in the field of injunction modification. 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932).

■ Cases that follow the traditional modification analysis have distilled from *Swift* two fundamental requirements for modifying a permanent injunction. *Money Store, Inc.,* 885 F.2d at 372. First, modification of a permanent injunction is extraordinary relief, and requires a showing of extraordinary circumstances. *Id.* Second, consideration of 60(b)(5) motions "does not allow relitigation of issues which have been resolved by the judgment." *Id.*[1]

The scope of inquiry is restricted when a court considers a motion for modification of a permanent injunction. "We are not framing a decree. We are asking ourselves whether anything has happened that will justify us now in changing a decree. The injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its

making." *Swift,* 286 U.S. at 119, 52 S.Ct. at 464.

Many cases since *Swift* have reiterated *Swift*'s restrictions on the district court's inquiry on a motion to modify a permanent injunction:

> [M]odification is only cautiously to be granted; ... some change is not enough; ... the dangers which the decree was meant to foreclose must almost have disappeared; ... hardship and oppression, extreme and unexpected, are significant; and ... the movants' task is to provide close to an unanswerable case. *To repeat: caution, substantial change, unforeseenness, oppressive hardship, and a clear showing are the requirements.*

*Humble Oil & Refining Co. v. American Oil Co.,* 405 F.2d 803, 813 (8th Cir.), *cert. denied,* 395 U.S. 905, 89 S.Ct. 1745, 23 L.Ed.2d 218 (1969) (emphasis added).

■ Under the *Swift* requirements, Fairbanks would need to show clearly a substantial change in circumstances or law since the orders were entered, extreme and unexpected hardship in compliance with the injunctions' terms, and a good reason why this panel should modify the permanent injunctions issued pursuant to the jury's determination of the facts of the case. Fairbanks has clearly failed to meet the *Swift* requirements for modification.

■ First, Fairbanks has only briefly alluded to changes in facts or law since the matter was tried to a jury. Fairbanks's argument that change has occurred is vague, conclusory, and unsupported. Though Fairbanks refers to changes in the equities underlying the permanent injunction, it does not explicitly point out what changes in fact cause these inequities. The "recent treatment" of commercial speech and Lanham Act issues by the Supreme Court which Fairbanks relies upon in its arguments[2] either predates or is contempo-

---

1. Fed.R.Civ.P. 60(b)(5) reads as follows: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated,

or *it is no longer equitable that the judgment should have prospective application....*" (Emphasis added.)

2. Fairbanks argues that the injunctions restrict its First Amendment commercial speech rights, but does not show how those rights, or the injunctions' effect on them, have changed since

raneous with the nine-year-old permanent injunctions, and is not, therefore, "new law" for the purposes of a modification motion. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1091 (9th Cir.1986), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987) (noting that "structural injunctive relief must follow the *changing* contours of constitutional law") (emphasis added). Additionally, though "[a]n intervening judicial opinion may require modification of an injunction," *id.* at 1090 (citing *Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 437–38, 96 S.Ct. 2697, 2705, 49 L.Ed.2d 599 (1976)), the district court's denial of the plaintiff's contempt motion in 1987 is not tantamount to an intervening judicial opinion and therefore does not require such a result.

Second, though the injunctions' terms are obviously burdensome, Fairbanks has not clearly shown oppressive *and* unforeseen hardship. Allegations of business losses in Fairbanks' brief are not, as Transgo points out, unexpected, nor does Fairbanks establish that those losses, if they occurred, were attributable to the injunctions' restrictions.

Third, Fairbanks presents no clear reason why this court should act incautiously to override the district court's and jury's determinations which were upheld on appeal. As pointed out above, the focus of judicial inquiry in proceeding to modify a permanent injunction is limited. The Fair-banks briefs attack the equity and soundness of the injunctions generally with little consideration of the narrow scope of a modification motion as enunciated in *Swift*.

Fairbanks argues, however, that some contemporary cases have limited *Swift* and its strict "extraordinariness" requirement to its facts. The most extreme statement of the more flexible standard is found in a 1969 opinion by Judge Friendly:

> While changes in fact or in law afford the clearest bases for altering an injunction, the power of equity has repeatedly been recognized as extending also to cases where a better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes.

*King–Seeley Thermos Co. v. Alladin Indus., Inc.*, 418 F.2d 31, 35 (2d Cir.1969) (reversing a district court's denial of a modification request, and remanding for reconsideration of modification to relieve the burden of an obligor). Fairbanks relies heavily on this case to support its argument for modification.

In an excellent article on contemporary injunction modification doctrine, one commentator lists the goal of relieving an obligor from unfairly oppressive or inefficient decrees as a recognized basis for modification of permanent injunctions in certain cases. Jost, 64 Tex.L.Rev. 1101, 1116. "[C]ourts have been willing, even absent

---

the time the injunctions were entered and affirmed on appeal.

Fairbanks also argues that the restrictions violate Lanham Act principles of fair use of descriptive terms. This argument is similarly misplaced for two reasons. First, although "[t]he Lanham Act allows a mark to be challenged at any time if it becomes generic, and, under certain circumstances, permits the nontrademark use of descriptive terms contained in an incontestable mark," *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 201, 105 S.Ct. 658, 665, 83 L.Ed.2d 582 (1985), Fairbanks does not argue that the "Shift Kit" mark has become genericized since the time the injunctions issued. Fairbanks fails to make this argument despite the fact that evidence it presents of trade use of the term tends to suggest increasingly generic use. Second, section 1115(b)(4) authorizes nontrademark use of a descriptive term only where the term is "used fairly and in good faith." 15 U.S.C.A. § 1115(b)(4) (West Supp.1990). "The holder of a protectable descriptive mark has no legal claim to an exclusive right in the primary, descriptive meaning of the term; consequently, anyone is free to use the term in its primary, descriptive sense *so long as such use does not lead to customer confusion as to the source* of the goods or services." *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 791 (5th Cir.1983). In this case, the jury specifically determined that Fairbanks used the term "Shift Kit" unfairly and in a manner that confused customers as to the source of the automatic transmission parts at issue. *See Transgo, Inc. v. Ajac*, 768 F.2d at 1022. Without any showing of change in the likelihood of customer confusion, appellants' attempt to distinguish between trademark and nontrademark, fair and unfair, use of "Shift Kit" in a modification proceeding is an inappropriate reconsideration of the jury's determination, effectuated by injunctions, and affirmed on appeal.

change in the law, to modify or dissolve an injunction in the interest of fairness and efficiency." *Id.*

A review of the cases cited to support this proposition, with the exception of *King–Seeley*, shows that this flexible modification standard is not, however, completely divorced from traditional *Swift* requirements.[3] Though courts have been increasingly willing to take efficiency and implementation experience into account in the modification analysis, *see Toussaint v. McCarthy*, 801 F.2d at 1090, there is still a need to show some change in the circumstances or an element of "unforeseenness" surrounding the enjoined activity which has rendered the injunction unnecessary or extremely burdensome.[4]

Because Fairbanks has not seriously alleged changed circumstances in law or fact, and has not pointed to any unforeseen conditions arising after the time the permanent injunctions issued, none of these cases calling for modification in the case of hardship supports the Fairbanks motion. Even in *King–Seeley*, the one case willing to completely exempt the modification standard from a change in circumstances, Judge Friendly stated, "[w]hile we hold there is power to modify an injunction even in the absence of changed conditions, the power should be sparingly exercised." *King–Seeley*, 418 F.2d at 35. We do not believe that this case is one of those rare cases which deserves the exercise of this power.

CONCLUSION

Appellants do not meet the requirements for modification of an injunction under Fed. R.Civ.P. 60(b)(5) as developed in case law. They have not alleged sufficient change in law or circumstances, nor have they pointed to unforeseen and burdensome hardship which would justify a modification. They do not argue that the term "Shift Kit" has become genericized for the purposes of the Lanham Act, 15 U.S.C. § 1115(b)(4).

The district court's order is therefore AFFIRMED. Parties will bear their own costs.

---

3. Where, for example, a court viewed an injunction as having served its purpose, it was willing to take the "harm and benefits that maintenance of the injunction would cause" into account as relevant factors, along with such considerations as past compliance. *Stewart v. General Motors Corp.*, 756 F.2d 1285, 1293 (7th Cir.1985). Only after noting the fact that changes in prison facilities and an unexpected increase in prison population rendered a decree unworkable was one court willing to take efficiency considerations into account. *Nelson v. Collins*, 659 F.2d 420, 427–29 (4th Cir.1981) (en banc). Only after recognizing that it would be impossible to meet certain mandatory timetables in an injunction due to circumstances beyond the defendant's control and not contemplated by the court or the parties was another court willing to exercise its equitable "power to modify the injunction in

light of experience." *Philadelphia Welfare Rights Org. v. Shapp*, 602 F.2d 1114, 1120–21 (3d Cir.1979), *cert. denied sub nom Thornburgh v. Philadelphia Welfare Rights Org.*, 444 U.S. 1026, 100 S.Ct. 689, 62 L.Ed.2d 660 (1980). Where adherence to an injunction's terms would cause an "extremely harsh impact" on consumers (not on defendants), one court was willing to modify the injunction, after citing the *Swift* changing circumstances standard. *Consolidated Edison Co. v. Federal Power Comm'n*, 511 F.2d 372, 378–79 (D.C.Cir.1974).

4. *See Toussaint*, 801 F.2d at 1090 ("Because permanent injunctive relief controls future conduct, we are sensitive to the need for modification when circumstances *change*.") (emphasis added).