Steven **HARRIS** et al.

v.

**TOWN OF LINCOLN,** et al.

No. 94–25–Appeal.

Supreme Court of Rhode Island.

Dec. 20, 1995.

---

Jonathan Oster, Lincoln, for plaintiff.

James P. Marusak, Denise M. Lombardo, Providence, for defendant.

OPINION

LEDERBERG, Justice.

This case arose as a result of the construction by the town of Lincoln (town) of a sewer-processing facility on town-owned

property next to the residence of the plaintiffs, Steven Harris and Denise Harris. The plaintiffs brought suit in the Superior Court where a trial justice found in favor of the plaintiffs and granted relief. In response, the defendants (the town; Claudette Paine, the Finance Director of the Town of Lincoln, and Burton Stallwood, alias) have appealed to the Supreme Court the order of the Superior Court granting compensatory damages and declaratory and injunctive relief to the plaintiffs and have also appealed subsequent orders that denied modification or suspension of the prescribed relief and mandated compliance with the original injunction. For the reasons stated below, we affirm in part and modify in part the orders of the trial justice. The facts and procedural history relevant to our holding are as follows.

**Facts and Procedural History**

In 1979 plaintiffs purchased residential property at 31 Maria Street in Lincoln, Rhode Island (plaintiffs' property). In June 1987 plaintiffs sought and were granted approval by the Zoning Board of the Town of Lincoln to build an addition to their home. At that time, plaintiffs attempted to purchase a lot owned by defendants, adjacent to plaintiffs' property, but were told that the lot was not for sale and would only be used for access to the Blackstone Canal.

On February 15, 1988, however, the town, as part of a townwide sewer project, began construction of a sewer pumping station on that adjacent lot. The sewer pumping station consisted of a covered wet well measuring four feet by six feet and a dry well measuring six feet by six feet along a centrifugal pump, according to Donald D'Anjou (D'Anjou), a supervisor for the town's sewer department, who testified at trial. The station operates by trapping solid waste on a grate that is raked and washed down twice per week. When the sewage in the wet well reaches a certain level, the pump turns on and the effluent is pumped to a treatment plant. Effluent remains in the wet well, however, when the station is not pumping. A fan circulates air into the building that encloses the two wells while vents circulate air that is released into the atmosphere.

Although plaintiffs complained to the town regarding the proximity of the pumping station to their home soon after construction began, the pumping station was, nevertheless, constructed twenty-six feet from plaintiffs' property line. On February 8, 1989, plaintiffs brought the instant action to claim damages and to enjoin defendants from operating the pumping station. Mr. Harris testified that since the pumping station began operating in 1989, he has heard the station's generator "hundreds of times." The plaintiffs testified that during the generator's operation, they felt vibrations, heard noise, and smelled odors. Mr. Harris likened the generator's noise inside his home to "a mack diesel truck right next to your door." According to plaintiffs' testimony, operation of the generator created diesel fumes, and the pumping station itself emitted sewage odors. Mr. Harris testified that the fumes and smells were present "[a]ll the time" but that they were at their worst in the summer months.

As a consequence of the pumping station's emission of noises, odors, and vibrations, plaintiffs claimed that the use and enjoyment of their property had been disrupted. The plaintiffs testified that they spent less time outside on their property, could not use their pool or have cookouts during the summer, and were no longer able to entertain in their backyard. The plaintiffs' testimony was buttressed by the testimony of their babysitter as well as several friends and neighbors who testified that they had experienced such noises, vibrations, and odors when visiting plaintiffs' home. A licensed real estate broker, Jo-Anne Siminski, testified that her analysis revealed a devaluation of plaintiffs' property of approximately $50,000—a decline in value from $225,000 to $174,900.

The defendants made an offer of proof that unavailable neighbors of plaintiffs would testify that noise from the generator was infrequent with no vibrations or odor. In addition, D'Anjou and the town's director of public works, Robert Schultz, both testified that they had never experienced noise, odor, or vibrations on plaintiffs' property. The plaintiffs and defendants presented conflicting expert testimony in regard to medical prob-

lems, mainly sinus infections, that Mr. Harris allegedly suffered as a result of the town's nearby operation of the pumping station.

The defendant also called a consulting engineer, Russell F. Geisser (Geisser), who testified that he had conducted noise, vibration, and air testing at locations in and around the pumping station and plaintiffs' home and found that when the pump was running, the noise level was "fairly low"—less than sixty decibels. When the generator was running, however, Geisser testified that the noise level outside plaintiffs' home was seventy-three decibels, which he equated with the noise made by a vacuum cleaner. Inside plaintiffs' home, operation of the generator resulted in a noise level of sixty-seven decibels, a level Geisser likened to the sound from a passing car. Geisser also testified that the results of vibration tests and chemical analyses of the air were negative. At the time these tests were conducted, the generator was not enclosed. Subsequent to the tests, but before trial, a wooden enclosure was constructed over the generator, although no measurements were made to ascertain the effect, if any, of the covering.

Richard Chiodini (Chiodini), the project engineer and designer of the pumping station, testified that a low spot in the drainage basin necessitated a pumping station in the area in order to remove sewage. According to Chiodini, the pumping station had to be located within 300 feet of the low point. Other locations within the 300–foot radius would require either the purchase of an easement or the exercise of the town's power of eminent domain. Chiodini also testified that the town's choice of location for the pumping station was constrained by the presence of a protected wetland on the Maria Street lot, and he stated that the pumping station "was relocated a maximum distance from the property line as possible, without infringing upon the wetland."

On August 4, 1993, the trial justice issued a written decision in which she concluded that plaintiffs had sustained their burden of proving that the location and operation of the sewage pumping station created a private nuisance that unreasonably interfered with the use and enjoyment of their property.

The trial justice accepted the testimony of plaintiffs and their witnesses and rejected the testimony of defendants' witnesses in respect to the existence of odor and noise. The trial justice further found that the operation of the pumping station amounted to a constructive taking of plaintiffs' property.

The trial justice enjoined the town from operating the pumping station and ordered it to relocate the station or to develop plans for a suitable alternative to the Maria Street site. In addition, the trial justice awarded plaintiffs $400 per month until the nuisance was abated as compensation for the value of the property taken by the town and for interference with plaintiffs' use and enjoyment of their home. On August 10, 1993, the trial justice issued an order consistent with her decision, and defendants appealed on August 18, 1993.

On October 13, 1993, defendants moved to modify and reconsider the order that required the town to move the pumping station to another site. The defendants submitted several plans that would move the station to another site, although they argued that it was not economically feasible to relocate the station completely.

Hearings were held on October 15, November 19, and December 16, 1993, to review the plans submitted by the town. The defendants asked the trial justice to view the site, but she stated that she doubted taking a view would be necessary. The alternative plans would (1) modify the station *in situ* at a cost of $22,280, (2) relocate the station to another area on the lot 113 feet from plaintiffs' house at a cost of $37,730, (3) relocate the system to other lots within the neighborhood 125 feet from the nearest residence at a cost of either $328,000 or $572,000, and (4) move the system to another site 230 feet from the nearest residence outside the neighborhood at a cost of $403,000. Laszlo Siegmund, a civil engineer, testified that plans 1 or 2 "would alleviate all the problems," but he could not state that there would be no noise from the generator.

At the conclusion of the hearings on December 16, 1993, the trial justice declined to select one of defendants' plans. Instead, she

directed defendants to develop a solution that would locate the pumping station no closer than 150 feet from any existing home in the neighborhood. On January 14, 1994, the trial justice entered an order denying defendants' motion to modify. The defendants appealed, and the trial justice granted defendants' motion to consolidate the appeals.

On appeal, we consider the following issues raised by defendants: (1) whether the trial justice properly concluded that the town had created a private nuisance, (2) whether the trial justice properly found that operation of the pumping station constituted a constructive taking of plaintiffs' property, (3) whether the trial justice properly granted $400 per month in monetary damages, and (4) whether the trial justice erred in denying defendants' motion to modify the injunction.

**Was a Private Nuisance Created?**

■ This Court will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties. *Gross v. Glazier*, 495 A.2d 672, 673 (R.I.1985); *Lisi v. Marra*, 424 A.2d 1052, 1055 (R.I.1981). This Court has consistently held that the trial justice is entitled to determine what weight to ascribe to the testimony and the evidence educed at trial. *Lisi*, 424 A.2d at 1055; *Raheb v. Lemenski*, 115 R.I. 576, 579, 350 A.2d 397, 399 (1976).

■ On appeal, defendants claimed that "[a]s a matter of law, the trial judge improperly found that a private nuisance existed since (a) plaintiff failed to present medical expert opinion proximately relating plaintiff's respiratory complaints to a specific source; and (b) plaintiff never presented sufficient expert or other evidence as to the existence of vibrations, odors or chemicals emanating from the facility." Because the determination of whether odors, vibrations, or noises create a nuisance is one of fact, not of law,

we are not persuaded by defendants' position. In this instance, the trial justice was presented with conflicting testimony. She specifically rejected the testimony of defendants' witnesses and accepted the testimony of plaintiffs' witnesses. Moreover, defendants' argument that plaintiffs were required to provide medical testimony proximately relating Mr. Harris's respiratory problems to a specific source is unfounded inasmuch as plaintiffs were not seeking damages for those problems. Rather, plaintiffs offered evidence of Mr. Harris's medical complaints to bolster their claim that a nuisance existed.

The defendants, in effect, have asked that this Court substitute its analysis of the evidence presented at trial for the analysis carried out by the trial justice. Unless the trial justice has misconstrued or overlooked material evidence, this Court will refrain from disturbing a judicial finding. The facts as found by the trial justice in this case can support a finding that the town did create a nuisance by means of the operation of the Maria Street pumping station. Consequently, we are constrained to conclude that the trial justice did not err in finding that the operation of the pumping station amounted to a private nuisance.

**Did a Constructive Taking (Inverse Condemnation) Occur?** [1]

■ Although we do not disturb the factual findings of the trial justice, it is the conclusion of this Court that those findings in the instant case do not support the trial justice's determination that the town's operation of a sewage pumping station on a lot adjacent to plaintiffs' property constituted a taking of plaintiffs' property without just compensation.

■ Article 1, section 16, of the Rhode Island Constitution states: "Private property shall not be taken for public uses, without just compensation." The Federal Constitution contains a nearly identical prohibition: "nor shall private property be taken for pub-

1. This Court held in *E & J, Inc. v. Redevelopment Agency of Woonsocket*, 122 R.I. 288, 290 n. 1, 405 A.2d 1187, 1189 n. 1 (1979): " 'Inverse condemnation' is a term used to describe a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency. *Ferguson v. Keene*, 108 N.H. 409, 238 A.2d 1 (1968)."

lic use, without just compensation." U.S. Const. Amend. V. The determination of whether a taking has occurred is a question of law. 11A Eugene McQuillan, *Municipal Corporations* § 32.132.30 (3d. ed.1991). Governmental action short of actual confiscation of property may be a "constructive" taking in violation of the Rhode Island and United States Constitutions "if such action deprives the property owner of all or most of his interest in the subject matter." *E & J, Inc. v. Redevelopment Agency of Woonsocket,* 122 R.I. 288, 290, 405 A.2d 1187, 1189 (1979). A plaintiff need not prove actual deprivation of possession but merely serious impairment of the use and enjoyment of property. *Id.* at 290–91, 405 A.2d at 1189.

The United States Supreme Court has consistently required landowners claiming unconstitutional takings, other than those whose taking-claims pertain to government regulation, to show some physical invasion of their property. Jeb Rubenfeld, *Usings,* 102 Yale L.J. 1077, 1084 (1993); *e.g., Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 431–32, 102 S.Ct. 3164, 3173–74, 73 L.Ed.2d 868, 879–80 (1982); *Pumpelly v. Green Bay Co.,* 80 U.S. (13 Wall.) 166, 20 L.Ed. 557 (1871). But a mere injury to property incidental to a governmental action, without a concomitant physical invasion, is not compensable. The rationale behind this emphasis on physical invasion is that the right to exclude others from one's property is "one of the most essential sticks in the bundle of rights that are commonly characterized as property." *Kaiser Aetna v. United States,* 444 U.S. 164, 176, 100 S.Ct. 383, 391, 62 L.Ed.2d 332, 344 (1979). Hence, depriving a property owner of physical autonomy over his or her property is tantamount to taking away a part of the property itself.

About half the state constitutions require compensation when property is taken *or damaged.* 2A Nichols, *Eminent Domain* § 6.02[1] at 6–30 n. 15 (rev. 3d ed. 1995). As we noted *ante,* however, Rhode Island's constitutional "takings" clause parallels the federal constitutional clause in not containing a "damages" clause. The Supreme Court of New Hampshire addressed this distinction between deprivation and damages in *Fergu-*

*son v. City of Keene,* 108 N.H. 409, 238 A.2d 1, (1968), *overruled on other grounds, Sundell v. Town of New London,* 119 N.H. 839, 409 A.2d 1315 (1979). In that case the plaintiff brought an inverse-condemnation action, seeking to recover damages for noise and vibration resulting from the operation of defendant's airport. The plaintiff alleged that a "warm up apron" located opposite the plaintiff's home created noise and vibrations that caused windows to break, made conversation and sleep impossible, and in sum made life in the house "unbearable." 108 N.H. at 410, 238 A.2d at 2. The plaintiff did not allege, however, that any planes flew directly over her property. The *Ferguson* court consequently held that, absent a showing of physical invasion, the plaintiff could not establish a compensable taking, "but that a cause of action in *nuisance* is sufficiently alleged." (Emphasis added.) *Id.* at 413, 238 A.2d at 4.

The inverse-condemnation cause of action provides landowners with a means of seeking redress for governmental intrusions that, if performed by private citizens, would warrant analysis under the law of trespass. 2A Nichols, § 6.05[2]. The court in *Ferguson* observed that

"[i]n holding that where no property is appropriated there may be no recovery for consequential damage due to noise, smoke, and vibrations incident to proximity to a railroad, in *Richards v. Washington Terminal Co.,* 233 U.S. 546, 555, 34 S.Ct. 654, 657, 58 L.Ed. 1088, the [United States Supreme] Court said: 'The doctrine has become so well established that it amounts to a rule of property, and should be modified, if at all, only by the law-making power.'" 108 N.H. at 412, 238 A.2d at 3.

In Rhode Island the Legislature has not undertaken the modification of this rule of property, and in addition this Court has construed article 1, section 16, broadly to mean that a taking must consist of the "actual seizing or direct taking of specific property for public use, as distinguished from incidental injury to it when not taken." *E & J, Inc.,* 122 R.I. at 294, 405 A.2d at 1190 (quoting *General Finance Corp. v. Archetto,* 93 R.I. 392, 397, 176 A.2d 73, 76 (1961), *appeal dis-*

*missed,* 369 U.S. 423, 82 S.Ct. 879, 8 L.Ed.2d 6 (1962)). The plaintiffs have neither claimed nor established any physical invasion or appropriation of their property. Moreover, plaintiffs have an adequate remedy in the law of nuisance. We are not prepared to implicate the constitutional prohibition of article 1, section 16, in a simple nuisance case. The mere fact that the party creating the nuisance happens to be a municipality does not warrant application of the takings clause.

**Were Monetary Damages Warranted?**

The defendants have argued that the trial justice erred in awarding plaintiffs $400 in damages per month. According to defendants, the damages award "is purely arbitrary, speculative and conjectural resulting in a clear abuse of discretion." We disagree.

The trial justice found "that a monthly assessment of damages is both reasonable and just compensation due to the continuing nature of the nuisance and type of interference suffered by the plaintiffs who not only lost the use of large areas of their realty but were continually subjected to noxious fumes and noise." A suit for an injunction restraining a continuing trespass "carries with it as an incident the right to an account for past damages." *Lonsdale Co. v. City of Woonsocket,* 25 R.I. 428, 443, 56 A. 448, 454 (1903). In addition, a plaintiff in a nuisance action is not required to elect between injunctive relief and monetary damages. 25 A.L.R. 5th § 2[b] at 593 (1994). The plaintiffs have been adversely affected by the town's operation of the pumping station, and they will continue to suffer such adverse effects as long as they live next to the pumping station. We hold, therefore, that the trial justice did not abuse her discretion in awarding plaintiffs damages as compensation for the diminution of the use and enjoyment of their property caused by the operation of the facility.

Nor did the trial justice abuse her discretion in finding that $400 was an appropriate monthly award. Although a damages award "may not properly be the result of speculation or conjecture," *Alterio v. Biltmore Construction Corp.,* 119 R.I. 307, 314, 377 A.2d 237, 240–41 (1977), this Court will not disturb a trial justice's award unless it is grossly excessive. *Krall v. M.A. Gammino Construction Co.,* 97 R.I. 495, 499, 199 A.2d 122, 124 (1964). We are not persuaded that an award of $400 per month is grossly excessive in light of the noises, odors, and fumes found to exist by the trial justice.

**Denial of Defendants' Motion to Modify the Injunction**

The defendants have argued that the trial justice improperly refused to modify the injunction. They have claimed that after plaintiffs presented testimony, but before entry of the final order, circumstances had changed such that the trial justice should have modified, suspended, or revised the injunction. According to defendants, evidence they were prepared to submit at a Rule 62 hearing indicated that "*no* odor, *no* noise, *no* fumes and *no* vibrations existed after plaintiffs testified." The defendants further argued that the trial justice abused her discretion in refusing to view plaintiffs' property and the pumping station.

Rule 62(c) of the Superior Court Rules of Civil Procedure provides that the Superior Court has discretion to "suspend, modify, restore, or grant an injunction during the pendency of the appeal." A sufficient change in circumstances is a meritorious reason for a court to modify an injunction, *Coalition of Black Leadership v. Cianci,* 570 F.2d 12, 14 (1st Cir.1978), but the consideration of a motion to modify an injunction does not allow relitigation of issues that have already been resolved at trial. *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 911 F.2d 363, 365 (9th Cir.1990).

In order to establish changed circumstances, defendants offered the testimony of neighbors whose testimony had already been presented at trial through an offer of proof. The defendants were attempting to show that the pumping station was no longer a nuisance because these neighbors did not experience any odor, noise, or vibration. That evidence, however, is precisely what was offered at trial and rejected by the trial justice. The defendants, in effect, were not claiming that circumstances had changed but that circumstances remained the same,

namely, that the pumping station was not a nuisance at the time of trial and was not a nuisance at the time of the subsequent hearing. On these facts, the trial justice was not clearly wrong in declining to modify the injunction.

 Moreover, the trial justice was not required to take a view of plaintiffs' property in order to better understand the testimony to be offered at trial. *Matter of Blackstone Valley District Commission*, 490 A.2d 974, 975 (R.I.1985). The trial justice, in declining the opportunity, explained, "I think I have a better understanding of this operation than some of the employees of the Town of Lincoln at this point." The trial justice, therefore, did not err in declining to take a view for the purpose of gathering supplemental evidence and in declining to modify the injunction on the basis of that evidence.

In summary, therefore, we conclude, first, that the trial justice properly found that the operation of the sewage pumping station in close proximity to the plaintiffs' property created a private nuisance, and we affirm that finding. Second, we hold that the trial justice erred in finding that the operation of the pumping station constituted a constructive taking of the plaintiffs' property, and consequently we vacate that finding. Third, we hold that the trial justice did not err in granting monetary damages and injunctive relief, although we modify the damage award and the relief as follows. The plaintiffs are awarded $400 per month as damages for the interference with the use and enjoyment of their property, which damages shall be awarded for the period between the date of the trial justice's order of August 10, 1993, and continuing to the date of the relocation of the facility in accordance with the terms set forth by the trial justice.

The town may, in the alternative, exercise its power of eminent domain and purchase the plaintiffs' property for a fair-market value, which value may be ascertained after an additional evidentiary hearing, if required, in which case the $400 monthly payments will terminate at the purchase date. Last, we affirm the trial justice's denial of the defendants' motion to modify the injunction. We return the case to the Superior Court for proceedings in accordance with this opinion.