CITY OF CHARLOTTE, A MUNICIPAL CORPORATION, PETITIONER v. ELLEN R. SPRATT, RESPONDENT.

(Filed 24 February, 1965.)

**1. Eminent Domain § 5—**

The measure of compensation for the taking of a part of a tract of land is the value of the land taken together with the diminution in value of the remaining land caused by the severance and the use to be made by the condemnor of the land taken.

**2. Eminent Domain § 1—**

Where private property is taken for a public purpose by an agent having the power of eminent domain, the owner, in the exercise of his constitutional rights, may maintain an action at common law to obtain just compensation when there is no applicable or adequate statutory remedy.

**3. Eminent Domain § 11;    Pleadings § 8—    Right to recover damages for temporary flight easement may not be joined in action to condemn a part of the tract obviating the flight easement.**

This action was instituted to assess compensation for the taking of a strip through the respondent's land to lengthen the runway of an adjacent airport. By amendment, respondents sought to recover damages resulting from the use of respondent's property as an approach way for air planes entering and leaving the airport. *Held:* Since the runway would be extended on a portion of the strip of land condemned, the necessity for a flight easement with respect to respondent's remaining property would then be obviated, and such flight easement was temporary and counterclaim to recover damages therefor, theretofore caused, G.S. 1-137, does not arise from the condemnation of the strip of land described in the petition, G.S. 40-12, and therefore allegations relating to such flight easement were properly stricken on motion.

**4. Aviation § 2—**

G.S. Chapter 63 contemplates full cooperation and compliance with Federal statutes and rules and regulations of appropriate Federal agencies in the operation of aircraft.

APPEAL by respondent from *Riddle, J.,* April 20, 1964, Schedule "D" Session of MECKLENBURG, docketed and argued as No. 246 at Fall Term 1964.

This condemnation proceeding was instituted December 4, 1963, in accordance with the procedure prescribed in G.S. 40-11 *et seq.,* before the Clerk of the Superior Court of Mecklenburg County, North Carolina.

Petitioner, City of Charlotte, a municipal corporation, seeks herein to acquire the fee simple title to the land described in the petition, referred to as containing 12½ acres, for the enlargement, expansion and extension of the north-south runway of petitioner's Douglas Municipal Airport. While inexact, the 12½ acres as shown on map attached to the petition may be described for present purposes as running north-south at a width of approximately 800 feet for a distance of approximately 800 feet.

Answering, respondent did not controvert petitioner's right to condemn the described 12½ acres. She alleged matters relevant to the value of the 12½ acres, namely, (1) that her homeplace and another dwelling were located thereon, and (2) that the 12½ acres include all of her frontage on both sides of Wilmount Road, a paved main thoroughfare running generally north-south through the 12½ acres. Too, she alleged matters pertinent to the alleged diminution in value of the remainder of her 78-acre tract, namely, (1) that the 12½ acres "lies in the heart" of the 78-acre tract and (2) that the re-

mainder of her 78-acre tract, after condemnation of the 12½ acres, will consist of two noncontiguous tracts.

By order dated March 6, 1964, the clerk appointed commissioners "to appraise the value of the real property of the respondent herein to be taken or condemned for public use."

By order dated March 19, 1964, the clerk, "in the discretion of the court," ordered, adjudged and decreed "that the respondent be, and she is hereby allowed to file an amendment to her answer in this cause." Thereupon, respondent filed a pleading entitled "Amendment to Answer," being the pleading directly involved in this appeal. The pertinent allegations of said "Amendment to Answer" are quoted below.

"(1)   (Allegation as to residence of respondent.)

"(2)   That the City of Charlotte . . . owns and operates the Douglas Municipal Airport in Mecklenburg County near the City of Charlotte pursuant to authority granted to it by the Legislature of the State of North Carolina, and as a part of its operation of said airport causes large numbers of aircraft both civilian and military to take off and land on said airport at all times of the day and night, the City charging the owners of said planes fees for the privilege of taking off and landing and using the facilities of said airport.

"(3)   (Allegations substantially the same as those set forth in original answer.)

"(4)   That in the last several years the plaintiff in the maintenance and operation of said Douglas Municipal Airport adjacent to the respondent's aforesaid 78 acres of land has caused more and more aircraft in ever increasing numbers to fly at increasingly lower altitudes over the respondent's aforesaid lands and because of the failure of the plaintiff to provide adequate facilities and approachways at its aforesaid airport for planes landing and taking off, the respondent's property aforesaid has been and is continuing to be used as an approachway for airplanes entering and leaving the airport, many planes flying over the respondent's land at altitudes as low as 100 feet or lower, and as the result of the noise and jar thus produced the value of all of said land has been substantially diminished, said planes flying over the respondent's lands at extremely low altitudes at all times of the day and night.

"(5)   That although the plaintiff herein now has and has had at all times herein complained of the power to acquire the respondent's property as an approachway or an easement of flight under its power of eminent domain it has failed and refused to do so and even now when the plaintiff is again extending its long runways for the purpose of flying ever larger numbers of aircraft in their use of said airport and

is now taking by its petition in this proceeding a strip out of the heart of the plaintiff's aforesaid 78-acre tract of land for the purpose of clearing and grading said strip which extends a distance of approximately 800 feet from one side of the respondent's property to the other, it still fails and refuses to take the necessary steps by eminent domain proceedings to condemn the remaining portion of the respondent's lands for a flight easement in order to provide reasonable and adequate compensation to the respondent for the damage to her adjacent property by reason of the flight easement it has thus taken and the burden of which easement it is daily causing to increase.

"That by reason of the foregoing facts the value of the respondent's entire tract of land hereinabove referred to has been substantially diminished and the respondent's property taken and appropriated by the plaintiff, City of Charlotte, for a public use without payment of just compensation to the respondent and the respondent is entitled to have her damages assessed for such taking in addition to the damages for the total value of the 12½ acres of land which the petitioner proposes to condemn by its original petition in this action.

"WHEREFORE, the respondent respectfully prays the court that adequate damages be assessed and awarded for the value of the 12½ acres of land which the petitioner seeks to take by its petition in this action and in addition to this that the respondent have and recover of the plaintiff reasonable and adequate damages to her entire 78-acre tract of land by reason of the taking of a permanent flight easement over her entire tract of land herein referred to; that the costs of this action be taxed against the petitioner and for such other and further relief as to the court may seem just and proper."

On April 10, 1964, petitioner demurred "to the new matter" contained in respondent's said "Amendment to Answer." After a hearing on said demurrer, the clerk, on April 17, 1964, entered an order which, after recitals, provided:

"And . . . it appearing to the court that the petitioner by this proceeding seeks to condemn a certain portion of a tract of land of the respondent; and it appearing to the court that the measure of damages is the difference between the fair market value of the entire tract of land immediately before the taking, which date of taking is the date of the filing of the petition, and the fair market value of the property remaining to the respondent immediately after the taking; or, stated in another manner, as being the value of the property actually taken and the consequent damages to the remainder of the property;

"It further appearing to the court that the petition does not contain a demand for a flight easement over the property of the respondent; and the question of the existence of a flight easement over the prop-

erty at this time is extraneous to this proceeding, and the question of the existence of a flight easement should not be considered by or included in the award to be made by the commissioners; it appearing to the court that the issue of whether or not a flight easement exists is a question to be determined by a jury in an action that may be brought for that purpose;

"It further appearing to the court and the court finding as a fact that the award to be issued by the commissioners should be restricted according to the requests of the petitioner set out in the petition, and that it is not relevant to this proceeding to raise the question of a flight easement;

"NOW, THEREFORE, the demurrer of the petitioner to the amendment to answer is sustained on the basis of Paragraph 2 and Paragraph 4, the court finding it not necessary to pass on the other two paragraphs contained in the demurrer;

"It is further ordered that the amendment to answer be and it hereby is stricken."

Respondent objected and excepted "(t)o the foregoing findings of fact, conclusions of law, and the signing of the order," and gave notice of appeal. Thereupon, the clerk, on April 17, 1964, entered the following order:

"The appeal is not allowed by the court at this stage of the proceedings, the court finding the notice of appeal being premature, being from an interlocutory order.

"IT IS ORDERED that the commissioners convene at the earliest possible date to continue their consideration of this proceeding."

On April 22, 1964, on motion of respondent, Judge Riddle ordered that the clerk transmit to him forthwith "all original records of the proceedings had before him."

On April 23, 1964, after hearing in superior court, Judge Riddle entered an order which, after recitals, provided:

"IT IS, THEREFORE, ORDERED that the order of the Clerk of Superior Court of Mecklenburg County dated, signed and filed April 17, 1964, sustaining the demurrer filed by the petitioner, be, and it hereby is, affirmed, and the appeal by the respondent is denied." Respondent excepted and appealed.

Subsequent to said order and appeal entries of April 23, 1964, to wit, on April 24, 1964, the commissioners filed their report and therein assessed respondent's damages at $40,200.00. On May 13, 1964, respondent filed exceptions to the commissioners' report and moved that it be set aside. Apparently, there has been no hearing before the clerk

on respondent's exceptions to the commissioners' report or on a motion, if any, that the commissioners' report be confirmed.

The record includes an undated paper writing entitled, "Exceptions to Findings of Fact and Conclusions of Law," in which respondent objects and excepts specifically to designated portions of the clerk's order of April 17, 1964. The record includes evidence offered by respondent before the commissioners at a hearing held March 19, 1964. Over petitioner's objection, Judge Riddle ordered that the commissioners' report and said evidence offered by respondent be included as part of the record and case on appeal.

Respondent assigns as error: "(1) The action of the court in sustaining the petitioner's demurrer to the respondent's amendment to answer containing counterclaim and to the signing and entry of the judgment sustaining demurrer. (2) The action of the court in finding as facts and concluding as a matter of law that the existence of a flight easement over the property in question was irrelevant to this proceeding, being a question to be determined by separate action and that the award to be issued by the commissioners should be restricted to the issue of damages raised by the petitioner only as set out in respondent's exceptions to findings of fact and conclusions of law."

As indicated, respondent's appeal is from Judge Riddle's order of April 23, 1964, in which he affirmed the clerk's order of April 17, 1964, which sustained petitioner's demurrer "to the new matter" alleged in respondent's "Amendment to Answer."

*John T. Morrisey, Sr., and Ray Rankin for petitioner appellee.*
*Carswell & Justice for respondent appellant.*

BOBBITT, J. In *United States v. Grizzard,* 219 U.S. 180, 31 S. Ct. 162, 55 L. Ed. 165, 31 L.R.A. (N.S.) 1135, Mr. Justice Lurton said: "Whenever there has been an actual physical taking of a part of a distinct tract of land, the compensation to be awarded includes not only the market value of that part of the tract appropriated, but the damage to the remainder *resulting from that taking,* embracing, of course, *injury due to the use to which the part appropriated is to be devoted."* (Our italics). This excerpt from Mr. Justice Lurton's opinion has been quoted with approval by this Court: *Power Co. v. Hayes,* 193 N.C. 104, 136 S.E. 353; *Moses v. Morganton,* 195 N.C. 92, 141 S.E. 484; *Ayden v. Lancaster,* 197 N.C. 556, 150 S.E. 40; *Light Co. v. Rogers,* 207 N.C. 751, 178 S.E. 575; *Light Company v. Creasman,* 262 N.C. 390, 137 S.E. 2d 497.

Under legal principles declared in *Light Company v. Creasman, supra,* and cases cited therein, respondent, based on the facts alleged in

the petition and original answer, was entitled to compensation for the value of the 12½ acres condemned by petitioner and for damage to the remainder of her 78-acre tract caused by (1) the severance of the 12½ acres therefrom and (2) the use to be made by petitioner of the 12½ acres.

Ordinarily, "for the purpose of determining the sum to be paid as compensation for land taken under the right of eminent domain, the value of the land taken should be ascertained as of the date of the taking, and . . . the land is taken within the meaning of this principle when the proceeding is begun." *Power Co. v. Hayes, supra.*

In condemnation proceedings, the petition, when filed by the condemnor, "must contain a description of the real estate which the corporation seeks to acquire." G.S. 40-12; 29A C.J.S., Eminent Domain § 259; 18 Am. Jur., Eminent Domain § 325; *Gastonia v. Glenn,* 218 N.C. 510, 11 S.E. 2d 459; *Light Company v. Creasman, supra..* The obligation of commissioners appointed pursuant to G.S. 40-17 is to appraise the lands described in the petition and "ascertain and determine the compensation which ought justly to be made by the corporation to the party or parties owning or interested in the real estate appraised by them."

Admittedly, petitioner does not seek herein to condemn a flight easement over the remaining portion of respondent's land.

As we interpret said "Amendment to Answer," the thrust of respondent's allegations is that petitioner, prior to the commencement of this proceeding, *had appropriated* a flight easement over her entire 78-acre tract. Even so, respondent does not allege such appropriation as the basis for a counterclaim in which, upon payment of a determined fair value, petitioner would acquire a flight easement clearly defined as to location and elevation. Rather, respondent alleges what occurred prior to this proceeding constitutes a basis for the award of *additional* compensation herein.

In *United States v. Brondum* (C.A. 5th), 272 F. 2d 642, Wisdom, Circuit Judge, in discussing the distinction between a clearance or obstruction easement and an avigation or flight easement, said: "An avigation easement may or may not contain provisions dealing with obstructions, but, unlike a clearance easement, in express terms it permits free flights over the land in question. It provides not just for flights in the air as a public highway — in that sense no easement would be necessary; it provides for flights that may be so low and so frequent as to amount to a taking of the property."

Respondent cites and relies upon decisions in actions for "inverse condemnation," a term often used to designate "a cause of action against a governmental defendant to recover the value of property

which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *City of Jacksonville v. Schumann (Fla.),* 167 So. 2d 95, 98; *Thornburg v. Port of Portland (Or.),* 376 P. 2d 100; *Martin v. Port of Seattle (Wash.),* 391 P. 2d 540.

The legal doctrine indicated by the term, "inverse condemnation," is well established in this jurisdiction. Where private property is *taken* for a public purpose by a municipality or other agency having the power of eminent domain under circumstances such that no procedure provided by statute affords an applicable or adequate remedy, the owner, in the exercise of his constitutional rights, may maintain *an action* to obtain just compensation therefor. *McKinney v. High Point,* 237 N.C. 66, 74 S.E. 2d 440; *Eller v. Board of Education,* 242 N.C. 584, 89 S.E. 2d 144; *Sale v. Highway Commission,* 242 N.C. 612, 89 S.E. 2d 290; *Cannon v. Wilmington,* 242 N.C. 711, 89 S.E. 2d 595; *Rhyne v. Mount Holly,* 251 N.C. 521, 112 S.E. 2d 40; *Insurance Co. v. Blythe Brothers Co.,* 260 N.C. 69, 131 S.E. 2d 900.

"Inverse condemnation" actions in which a defined flight easement was vested in the United States by judicial decree and in which the landowner was awarded compensation therefor include the following: *Herring v. United States (Ct. Cl.),* 162 F. Supp. 769; *Highland Park v. United States (Ct. Cl.),* 161 F. Supp. 597; *Matson v. United States (Ct. Cl.),* 171 F. Supp. 283. In *Herring,* it was adjudged that the United States, upon payment of compensation in the amount of $7,500.00, "shall have an easement of flight for light, propeller-driven, single-engine airplanes at a minimum elevation of 45 feet above the surface of the ground and higher." In *Highland Park,* it was adjudged that the United States, upon payment of compensation in the amount of $65,-000.00, "is vested with a perpetual easement of flight over plaintiff's property at an elevation of 100 feet or more above the ground, with airplanes of any character." In *Matson,* it was adjudged that the United States, upon payment of compensation in the amount of $5,-800.00, was entitled to "a perpetual easement of flight . . . for its planes over the entire property of plaintiffs' 357.7 acres at elevations above eighty-five feet"; and it was further adjudged that the plaintiffs execute a deed conveying to the United States such an easement.

In *Avery v. United States (Ct. Cl.),* 330 F. 2d 640, where the United States had theretofore acquired by condemnation a defined flight easement, it was held that "the introduction of larger, heavier, noisier aircraft can constitute a fifth amendment taking of an *additional* easement *even though* new aircraft do not violate the boundaries of the initial easement" and entitle the landowner to additional compensation for "an uncompensated expansion of the existing easement."

CHARLOTTE *v.* SPRATT.

Other pertinent decisions are cited and discussed in Annotation, "Airport operations or flight of aircraft as taking or damaging of property," 77 A.L.R. 2d 1355 *et seq.,* and supplemental decisions.

In *United States v. Causby,* 328 U.S. 256, 90 L. Ed. 1206, 66 S. Ct. 1062 (1946), "a case of first impression," the Supreme Court of the United States reviewed the decision of the United States Court of Claims in *Causby v. United States (Ct. Cl. 1945),* 60 F. Supp. 751. The claimants (Causby) owned land adjacent to the Greensboro-High Point Municipal Airport. The airport had been leased by the United States. The path of glide of aircraft taking off from or landing upon the (paved) northwest-southeast runway was directly over the Causby property. Various aircraft of the United States, including bombers, transports and fighters, used said runway. The findings of the Court of Claims were to the effect that there was a diminution in value of the Causby property caused by frequent, low-level flights of United States aircraft.

The Supreme Court agreed "that a servitude has been imposed upon the land." However, the decision of the Court of Claims was reversed. The ground for reversal was stated as follows: "The Court of Claims held, as we have noted, that an easement was taken. But the findings of fact contain no precise description as to its nature. It is not described in terms of frequency of flight, permissible altitude, or type of airplane. Nor is there a finding as to whether the easement taken was temporary or permanent. Yet an accurate description of the property taken is essential, since that interest vests in the United States."

Thereafter, in *Causby v. United States (Ct. Cl. 1948),* 75 F. Supp. 262, the Court of Claims found: "There is no proof that subsequent to November 1, 1946, the defendant asserted or exercised such an easement. The easement taken was temporary and was for the period from June 1, 1942, to November 1, 1946." As a result of the taking of said temporary easement, Causby was awarded compensation in the amount of $1,435.00 consisting of (1) $1,060.00 for decrease in rental value during said period, and (2) $375.00 on account of destruction of chickens.

In *Griggs v. Allegheny County,* 369 U.S. 84, 7 L. Ed. 2d 585, 82 S. Ct. 531, rehearing denied, 369 U.S. 857, 8 L. Ed. 2d 16, 82 S. Ct. 931, the Greater Pittsburgh Airport, owned and operated by Allegheny County, was involved. The opinion of Mr. Justice Douglas states: "The airport was designed for public use in conformity with the rules and regulations of the Civil Aeronautics Administration within the scope of the National Airport Plan provided for in 49 U.S.C. §§ 1101 *et seq.*" Again: "The airlines that use the airport are lessees of respondent; and the leases give them, among other things, the right 'to

land' and 'take off.' No flights were in violation of the regulations of
C.C.A.; nor were any flights lower than necessary for a safe landing
or take-off. The planes taking off from the northeast runway observed
regular flight patterns ranging from 30 feet to 300 feet over petitioner's
residence; and on let-down they were within 53 to 153 feet." It was
held, in accordance with *Causby,* that there had been *a taking* of an
easement by Allegheny County for which Griggs was entitled to com-
pensation. The basis of the dissent of Mr. Justice Black, with whom
Mr. Justice Frankfurter concurred, is that the United States of
America rather than Allegheny County should pay for an easement
necessary to be acquired to comply with federal statutory provisions
and rules and regulations of federal agencies.

Our statutes, codified as G.S. Chapter 63, entitled "Aeronautics,"
contemplate full cooperation and compliance with federal statutes and
rules and regulations of appropriate federal agencies.

While the *factual* allegations in respondent's "Amendment to An-
swer" are meager, analysis thereof discloses respondent seeks additional
compensation as in an "inverse condemnation" action for the diminu-
tion in value of her 78-acre tract prior to the commencement of the
present proceeding allegedly caused by the actual use of her property
"as an approachway for airplanes entering and leaving the airport."
It does not appear whether any particular line of flight over respon-
dent's 78-acre tract had been designated by petitioner or by any federal
agency as an approachway to the north-south runway (as then con-
structed) of the airport. Be that as it may, upon final adjudication in
this proceeding (G.S. 40-19; *Topping v. Board of Education,* 249 N.C.
291, 299, 106 S.E. 2d 502), petitioner will own in fee simple the 12½
acres on which the extension of the north-south runway is constructed.
After construction of said extension, there will be no need for planes
approaching or taking off from said airport to fly over any portion
of respondent's remaining property. A portion of the north-south run-
way as extended will be on the 12½ acres condemned in this proceed-
ing. Hence, no permanent flight easement with reference to respondent's
remaining property is presently involved.

As of the date this proceeding was commenced, no "inverse condem-
nation" action had been commenced by respondent. If she was entitled
to compensation for a flight easement previously used by petitioner,
the nature and duration of such flight easement had not been deter-
mined. The extension of the north-south runway, partly on the 12½
acres condemned herein, radically changes the north-south "approach-
way" to said airport. Whatever flight easement, if any, petitioner had
taken prior to the commencement of this proceeding must be considered
a temporary easement.

We reach the following conclusions:

The compensation to be awarded respondent herein for the 12½ acres condemned herein is to be determined in accordance with the rules set forth in the first two paragraphs of this opinion. In making such determination, both the 12½ acres condemned and the remainder of respondent's 78-acre tract *are to be considered free and clear of flight easements of any kind.*

The foregoing determination herein will be without prejudice to respondent's right, if so advised, to institute an independent action to recover compensation for the damages, if any, she sustained on account of flights over her 78-acre tract prior to the commencement of this proceeding.

Legal principles pertinent to such independent action are discussed in *Causby* and other cited cases. Suffice to say, whether respondent can recover in such independent action will depend upon legal principles and evidence that have no place in determining the compensation to be paid respondent for the 12½ acres condemned herein. Such action, in our opinion, may not be considered a cause of action "arising out of the . . . transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the (plaintiff's) action," within the meaning of G.S. 1-137. The statutory procedure for condemnation, G.S. 40-11 *et seq.,* does not contemplate that commissioners pass upon issues of fact prerequisite to an adjudication as to whether respondent is entitled to recover for *an alleged appropriation by use* of an easement of flight.

Having reached the conclusion respondent may not assert herein "the new matter" alleged in said "Amendment to Answer," the order of Judge Riddle, which affirmed the clerk's order of April 17, 1964, is affirmed.

Affirmed.