IN THE SUPREME COURT OF NORTH CAROLINA

No. 87PA24

Filed 12 December 2025

WILLIAM T. SANDERS

v.

NORTH CAROLINA DEPARTMENT OF TRANSPORTATION

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, No. COA22-440 (N.C. Ct. App. Feb. 6, 2024), affirming an order entered on 28 December 2021 by Judge Stephan R. Futrell in Superior Court, Cumberland County. On 21 March 2025, the Supreme Court allowed plaintiff's conditional petition for discretionary review as to an additional issue. Heard in the Supreme Court on 16 September 2025.

*Cranfill Sumner LLP, by George B. Autry Jr., Stephanie H. Autry, and Jeremy H. Hopkins, for plaintiff-appellee.*

*Howard B. Rhodes, Matthew W. Skidmore, and Jeff Jackson, Attorney General, by J. Aldean Webster III, Special Deputy Attorney General, for defendant-appellant.*

*Matthew H. Bryant for Beroth Oil Company and James & Carol Deans, amici curiae.*

ALLEN, Justice.

"Both the [United States] Constitution and the North Carolina Constitution require due process and just compensation when a public entity uses its eminent domain power to take property." *Dep't of Transp. v. Bloomsbury Ests., LLC*, 386 N.C.

384, 392 (2024) (first citing U.S. Const. amend. XIV, § 1; and then citing N.C. Const. art I, § 19). In *Kirby v. North Carolina Department of Transportation*, we held that restrictions imposed on private property by corridor maps recorded under the Roadway Corridor Official Map Act (Map Act) constituted a taking by defendant North Carolina Department of Transportation (NCDOT). 368 N.C. 847, 856 (2016). Here, NCDOT recorded corridor maps that covered parts of a tract owned by plaintiff William T. Sanders. We must decide whether plaintiff abandoned his right to seek damages for the Map Act restrictions on his land by not raising the issue in a condemnation action instituted by NCDOT after those restrictions went into effect. Because we hold that state law required plaintiff to raise the Map Act restrictions in NCDOT's condemnation action affecting the same property, we reverse the judgment of the Court of Appeals allowing plaintiff to pursue damages for inverse condemnation.

I.

The North Carolina General Assembly enacted the now-repealed Map Act in 1987. Act of Aug. 7, 1987, ch. 747, sec. 19, 1987 N.C. Sess. Laws 1520, 1538–42 (repealed 21 June 2019). While the Map Act remained in effect, "once NCDOT file[d] a highway corridor map with the county register of deeds, the Act impose[d] certain restrictions upon property located within the corridor for an indefinite period of time." *Kirby*, 368 N.C. at 849 (citing N.C.G.S. § 136-44.51 (2015)). In general, property located within a corridor map could not be developed or subdivided unless the owners

first obtained approval through an administrative process that could drag on for years.[1]

The corridor maps effectively functioned as cost-cutting mechanisms for NCDOT by limiting the ability of property owners to improve their parcels and alerting potential buyers to the possibility that the land could be taken for roadway projects. "By recording a corridor map, [NC]DOT [was] able to foreshadow which properties [would] eventually be taken for roadway projects and in turn, decrease the future price the State [would have to] pay to obtain those affected parcels." *Beroth*

---

[1] More specifically, as we explained in *Kirby*:

> Owners whose properties [were] located within the highway corridor [could] seek administrative relief from the[ ] restrictions by applying for a building permit or subdivision plat approval, [N.C.G.S.] § 136-44.51(a)–(c), a variance, *id.* § 136-44.52, or an "advanced acquisition" of the property "due to an imposed hardship," *id.* § 136-44.53. In the first instance, if after three years a property owner's application for a building permit or subdivision plat ha[d] not been approved, the "entity that adopted the transportation corridor official map" [had to] either approve the application or initiate acquisition proceedings, or else the applicant "[could] treat the real property as unencumbered." *Id.* § 136-44.51(b). In the second instance, "a variance [could] be granted upon a showing that: (1) Even with the tax benefits authorized by this Article, no reasonable return [could] be earned from the land; and (2) The requirements of [N.C.]G.S. 136-44.51 result[ed] in practical difficulties or unnecessary hardships." *Id.* § 136-44.52(d). In the third instance, an "advanced acquisition" [could] be made upon establishing "an undue hardship on the affected property owner." *Id.* § 136-44.53(a). Property approved under the hardship category [had to] be acquired within three years or "the restrictions of the map [had to] be removed from the property." *Id.*

*Kirby*, 368 N.C. at 849–50 (cleaned up).

*Oil Co. v. N.C. Dep't of Transp.*, 367 N.C. 333, 349 (2014) (Newby, J., dissenting in part and concurring in part). *But see Kirby*, 368 N.C. at 852 (acknowledging NCDOT's assertion "that 'cost-cutting' is not the only underlying purpose of the Map Act").

On 29 October 1992, NCDOT recorded a corridor map (1992 map) for the Fayetteville Outer Loop project. At the time, plaintiff owned a tract of land in Cumberland County totaling nearly 650 acres. This 1992 map covered 92.969 acres of plaintiff's property.

Ten years later, on 23 December 2002, NCDOT filed a complaint and declaration of taking (2002 direct action) to acquire 9.280 acres of plaintiff's property in fee simple and easements on a further 6.169 acres. Although unrelated to the Fayetteville Outer Loop project, this taking included some of plaintiff's property covered by the 1992 map. The complaint and declaration made no reference to the Map Act restrictions on plaintiff's property, but plaintiff was clearly aware of them. Plaintiff's attorney sent a letter to NCDOT in March 2004 describing plaintiff's inability to develop his property due to Map Act encumbrances as "an extraordinary hardship."

The parties settled the 2002 direct action for $192,630. In an order filed on 29 November 2004, the trial court incorporated the settlement into a consent judgment (2004 consent judgment).

On 6 June 2006, NCDOT filed a second corridor map (2006 map) for the Fayetteville Outer Loop project. The 2006 map covered another 20.135 acres of

plaintiff's land.

In December 2008, plaintiff's attorney sent NCDOT another letter, this one making a public records request for the appraisal of a portion of plaintiff's land related to the Fayetteville Outer Loop project. The letter explained that plaintiff needed the appraisal to obtain a loan so that he could "survive until [NCDOT] is able to proceed with the acquisition."

On 5 August 2010, NCDOT filed a second complaint and declaration of taking (2010 direct action), this time to acquire 101.763 acres of plaintiff's property in fee simple and easements on another 3.613 acres. About sixty acres of the fee simple taking had been included in the 1992 map. NCDOT also obtained in fee simple the additional 20.135 acres subject to Map Act restrictions under the 2006 map. As in the 2002 direct action, the complaint and declaration of taking said nothing about the Map Act restrictions on plaintiff's property.

The parties settled the 2010 direct action for $15,800,000 on 1 November 2011 (2011 consent judgment). After the 2011 consent judgment, 28.041 acres of plaintiff's property remained subject to Map Act restrictions under the 1992 map. The restrictions ceased when the General Assembly repealed both the 1992 map and the 2006 map in 2016.

The repeal of the 1992 and 2006 maps occurred a few months after this Court issued its decision in *Kirby*. We held that the restrictions imposed by the corridor maps at issue in that case "constitute[d] a taking of [the *Kirby*] plaintiffs' elemental

property rights by eminent domain," thus triggering the constitutional right of those plaintiffs to just compensation. *Kirby*, 368 N.C. at 848; *see also Town of Morganton v. Hutton & Bourbonnais Co.*, 251 N.C. 531, 533 (1960) ("The power of eminent domain, that is, the right to take private property for public use, is inherent in sovereignty. Our Constitution . . . requires payment of fair compensation for the property so taken.").

On 13 December 2018, plaintiff instituted the current action by filing his complaint for inverse condemnation under N.C.G.S. § 136-111 in the Superior Court, Cumberland County. An inverse condemnation action can be used to obtain just compensation when NCDOT has taken property without filing a complaint and declaration of taking. N.C.G.S. § 136-111 (2023). *See generally City of Charlotte v. Spratt*, 263 N.C. 656, 662–63 (1965) (explaining that the term "inverse condemnation" generally refers to "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency" (cleaned up)).

In his complaint, plaintiff alleged that the 2004 and 2011 consent judgments did not compensate him for the Map Act restrictions on his land. Consequently, according to the complaint, NCDOT still owed plaintiff just compensation for the

restrictions placed on his property by the 1992 and 2006 maps.[2]

NCDOT filed a motion to dismiss pursuant to Rule 12(b)(6) (failure to state a claim upon which relief can be granted) of the North Carolina Rules of Civil Procedure.[3] *See* N.C.G.S. § 1A-1, Rule 12(b)(6) (2023). The motion asserted that plaintiff's inverse condemnation claims were barred by the statute of limitations, the doctrine of res judicata, and North Carolina's eminent domain statutes.[4] Plaintiff moved for a hearing under N.C.G.S. § 136-108 on "all issues raised by the pleadings other than the issue of damages."

On 28 December 2021, after a hearing on both parties' motions, the trial court entered an order dismissing some but not all of plaintiff's claims. In the first place, the court determined that plaintiff could have—"but was not required to"—assert his Map Act takings claims in either the 2002 direct action or the 2010 direct action.

Turning to NCDOT's res judicata defense, the court agreed with NCDOT that res judicata barred plaintiff's inverse condemnation claims for those portions of his

---

[2] In addition to seeking damages under N.C.G.S. § 136-111, the complaint alleged claims directly under the Fifth Amendment to the United States Constitution and Article 1, Section 19 of the North Carolina Constitution. The trial court dismissed the constitutional claims, reasoning that N.C.G.S. § 136-111 constituted an adequate remedy. The dismissal of plaintiff's constitutional claims has not been appealed to this Court. Accordingly, the only claims before us are statutory.

[3] NCDOT's motion to dismiss also cited Rules 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(2) (lack of personal jurisdiction). Additionally, the motion requested judgment on the pleadings pursuant to Rule 12(c). The trial court denied the Rule 12(b)(1) and 12(c) motions. It appears that it did not rule on the Rule 12(b)(2) motion.

[4] "The doctrine of res judicata . . . provides that 'a final judgment on the merits in a prior action will prevent a second suit based on the same cause of action between the same parties.'" *Doe 1K v. Roman Cath. Diocese*, 387 N.C. 12, 15 (2025) (quoting *Thomas M. McInnis & Assocs., Inc. v. Hall*, 318 N.C. 421, 427–28 (1986)).

land taken in fee simple by NCDOT in the 2002 and 2010 direct actions; however, the court also concluded that plaintiff could proceed with his inverse condemnation action for other portions of his land that were covered by the 1992 map or the 2006 map. In essence, this meant that plaintiff could pursue his inverse condemnation action with respect to the 28.041 acres that remained subject to Map Act restrictions after the 2010 direct action.

Finally, in rejecting NCDOT's statute-of-limitations defense, the trial court relied on the text of N.C.G.S. § 136-111, which declares that an inverse condemnation action may be filed "within 24 months of the date of the taking of the affected property or interest therein or the completion of the project involving the taking, whichever shall occur later." N.C.G.S. § 136-111. Observing that plaintiff filed his complaint before the completion of the Fayetteville Outer Loop project, the court ruled that NCDOT's "motion to dismiss for failure to comply with the statute of limitations should be denied."

Both parties appealed the trial court's order to the Court of Appeals. In part, NCDOT argued that the twenty-four-month statute of limitations in N.C.G.S. § 136-111 does not control plaintiff's inverse condemnation action. In support of its position, NCDOT noted that N.C.G.S. § 136-111 expressly does not apply when NCDOT has filed a complaint and declaration of taking, as it did twice here. NCDOT directed the court's attention to N.C.G.S. § 136-107, which provides that "[a]ny person named in and served with a complaint and declaration of taking shall have 12 months

from the date of service thereof to file answer." N.C.G.S. § 136-107 (2023). If the person so named and served fails to file a timely answer, her failure constitutes "a waiver of any further proceeding to determine just compensation." *Id.* "According to NCDOT, because the entire tract of [plaintiff's] land was identified in the declarations of taking . . . , all claims for inverse condemnation with respect to those tracts must have been raised under N.C.G.S. § 136-107 in [plaintiff's] answer to the original declarations of taking." *Sanders v. N.C. Dep't of Transp.*, No. COA22-440, slip op. at 14 (N.C. Ct. App. Feb. 6, 2024) (unpublished).

On 6 February 2024, a unanimous panel of the Court of Appeals affirmed the trial court's order in an unpublished opinion. *Id.* at 2. In so doing, the appellate court disagreed with NCDOT's application of N.C.G.S. § 136-107. "While it may be true that the complaints and declarations of taking culminating in the [2004 and 2011] consent judgments . . . dealt with the same tracts of land," the court explained, NCDOT did not deny "that the interests in the land contemplated by the [2004 and 2011] consent judgments are [not] the same interests at issue in this case." *Id.* at 16–17. Those complaints and declarations of taking concerned fee simple takings and easements separate from the restrictions imposed on plaintiff's property by the 1992 and 2006 maps. Because plaintiff's complaint sought compensation for interests in land "independent from those identified in [NCDOT's] complaints and declarations of taking," the Court of Appeals held that "the [twelve-month] timeframe allotted in

N.C.G.S. § 136-107 does not operate to bar the current claim."[5] *Id.* at 17.

NCDOT petitioned this Court for discretionary review of the decision of the Court of Appeals. Plaintiff responded by asking us to deny NCDOT's petition or, in the alternative, to allow his conditional petition for discretionary review of additional issues. We allowed both petitions.

## II.

A trial court's order disposing of a Rule 12(b)(6) motion to dismiss receives de novo review on appeal. *Taylor v. Bank of Am., N.A.*, 382 N.C. 677, 679 (2022). Like the trial court, the appellate court must treat the complaint's factual allegations as true when assessing whether the complaint fails to state a valid legal claim. *Lannan v. Bd. of Governors*, 387 N.C. 239, 246–47 (2025).

Similarly, "[w]e review a lower court's interpretation of statutes *de novo.*" *Morris v. Rodeberg*, 385 N.C. 405, 409 (2023). "When reviewing a matter *de novo*, this Court considers the matter anew and freely substitutes its own judgment for that of the lower courts." *Town of Midland v. Harrell*, 385 N.C. 365, 370 (2023) (cleaned up).

## III.

In its primary brief to this Court, NCDOT argues that Chapter 136 of the General Statutes bars this lawsuit because plaintiff failed to raise his inverse condemnation claims in the 2010 direct action. Our reading of the relevant statutory

---

[5] The Court of Appeals also rejected NCDOT's other challenges to the trial court's order. We need not describe those challenges, however, because we ultimately rule for NCDOT on other grounds.

provisions leads us to agree.

"The primary aim of statutory construction 'is to accomplish the legislative intent.'" *N.C. Dep't of Env't Quality v. N.C. Farm Bureau Fed'n, Inc.*, No. 338PA23, slip op. at 12 (N.C. Oct. 17, 2025) (quoting *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664 (2001)). In pursuit of that intent, a court "must begin with an examination of the relevant statutory language." *Wilkie v. City of Boiling Spring Lakes*, 370 N.C. 540, 547 (2018).

As explained above, both the trial court and the Court of Appeals concluded that the statute of limitations in N.C.G.S. § 136-111 applies to at least some of plaintiff's inverse condemnation claims. According to its title, N.C.G.S. § 136-111 provides a remedy where no declaration of taking has been filed. N.C.G.S. § 136-111 ("Remedy where no declaration of taking filed; recording memorandum of action."). *See generally Smith Chapel Baptist Church v. City of Durham*, 350 N.C. 805, 812 (1999) ("[T]his Court has stated that the title of an act should be considered in ascertaining the intent of the legislature.").

The text of the statute aligns with its title:

> Any person whose land or compensable interest therein has been taken by an intentional or unintentional act or omission of the Department of Transportation *and no complaint and declaration of taking has been filed by said Department of Transportation* may, within 24 months of the date of the taking of the affected property or interest therein or the completion of the project involving the taking, whichever shall occur later, file a complaint in the superior court . . . .

N.C.G.S. § 136-111 (emphasis added).

By the plain terms of its title and text, N.C.G.S. § 136-111 does not apply when the "affected property" is the subject of a complaint and declaration of taking filed by NCDOT. Thus, if the "affected property" in this case encompasses plaintiff's entire tract, and not just the portion of the property taken in the 2010 direct action, then the complaint and declaration of taking filed by NCDOT in 2010 put plaintiff's inverse condemnation claims outside the ambit of N.C.G.S. § 136-111.

In NCDOT's view, "[t]he 'affected property' identified in the statute is the landowner's entire tract, not merely the specific portion [NC]DOT identified for right-of-way purposes in its complaint." Plaintiff insists that "[t]he obvious import of the language in N.C.G.S. § 136-111 is that an owner cannot file an inverse condemnation claim seeking compensation for *the same interest* [NC]DOT has already taken by filing a direct condemnation."

In the context of this case, NCDOT's reading of N.C.G.S. § 136-111 seems correct to us when it is considered alongside other provisions in Chapter 136. *See generally Carver v. Carver*, 310 N.C. 669, 674 (1984) ("It is . . . a fundamental canon of statutory construction that statutes . . . which relate or are applicable to the same matter or subject . . . must be construed together in order to ascertain legislative intent.").

Chapter 136 authorizes NCDOT to exercise the power of eminent domain through condemnation actions. *See* N.C.G.S. §§ 136-103 to -121.1 (2023). NCDOT

initiates a condemnation action by filing a complaint and declaration of taking, "accompanied by the deposit of the sum of money estimated by [NCDOT] to be just compensation for [the] taking." N.C.G.S. § 136-103(d). Both the complaint and the declaration must describe "the entire tract or tracts affected by" the taking. N.C.G.S. § 136-103(b)(2), (c)(2).

If the property owner disagrees with NCDOT's estimate of just compensation, he may file an answer to the complaint pursuant to N.C.G.S. § 136-106. The owner has twelve months after being served with the complaint and declaration to file such an answer. N.C.G.S. § 136-107. The owner's failure to file an answer within twelve months of service "shall constitute an admission that the amount deposited is just compensation and shall be a waiver of any further proceeding to determine just compensation." *Id.* If the owner files an answer, it must contain, among other things, "[s]uch affirmative defenses or matters as are pertinent to the action." N.C.G.S. § 136-106(a).

At this point, the question becomes whether for purposes of N.C.G.S. § 136-106 the Map Act restrictions on plaintiff's property were "pertinent to" the 2010 direct action. If they were, then N.C.G.S. § 136-106 required plaintiff to raise them in an answer timely filed, something plaintiff did not do.

We think that the plain language of N.C.G.S. § 136-112 compels us to answer this question in the affirmative. Section 136-112 directs that damages in condemnation actions be calculated as follows:

(1)     Where only a part of a tract is taken, the measure of damages for said taking shall be the difference between the fair market value of the entire tract immediately prior to said taking and the fair market value of the remainder immediately after said taking, with consideration being given to any special or general benefits resulting from the utilization of the part taken for highway purposes.

(2)     Where the entire tract is taken the measure of damages for said taking shall be the fair market value of the property at the time of taking.

N.C.G.S. § 136-112.

Subsection (1) of section 136-112 addresses partial takings. Basically, subsection (1) provides that the damages for a partial taking equal the difference between the fair market value of the entire tract immediately before the taking and the fair market value of the remainder immediately after the taking.

Here, of course, the 2010 direct action resulted in a partial taking of plaintiff's property, so subsection (1) would have governed the calculation of plaintiff's damages. Map Act restrictions encumbered part of plaintiff's property immediately before the 2010 direct action and continued to encumber 28.041 acres of plaintiff's remaining property immediately after the 2010 condemnation. In his complaint, plaintiff alleged that the restrictions damaged his property by "severely impact[ing] [its] use, marketability, and value." When accepted as true, as the allegations in a complaint must be when a court reviews a Rule 12(b)(6) dismissal motion, this allegation establishes that Map Act restrictions negatively affected the fair market value of plaintiff's property both immediately before and after the 2010 taking. It follows that

a court could not have properly determined plaintiff's damages in the 2010 direct action without taking those restrictions into account. The restrictions were thus "pertinent to" the 2010 direct action, and N.C.G.S. § 136-106 required plaintiff to include them in a timely answer if he wanted them to be part of the damages calculation.

Indeed, it may well be that N.C.G.S. § 136-106 obliged plaintiff to raise the Map Act restrictions on the 28.041 acres in the 2002 direct action. As remarked above, the 1992 map imposed those restrictions, so they were in effect when NCDOT served the 2002 complaint and declaration on plaintiff. We need not decide this issue, though, because NCDOT has confined its argument to whether the 2010 direct action marked plaintiff's last opportunity to request damages for the Map Act restrictions on his property.

Inasmuch as he had to include the Map Act restrictions in an answer filed pursuant to N.C.G.S. § 136-106, plaintiff may not now pursue damages for those restrictions through an inverse condemnation action under N.C.G.S. § 136-111. In this case, the "affected property" is plaintiff's entire tract, not merely the areas covered by the 1992 or 2006 map. The Court of Appeals therefore erred in holding that plaintiff has a viable claim for inverse condemnation.

Plaintiff cites numerous precedents that he contends bolster his position. Having reviewed those authorities, we think that each of them differs materially from this case.

For instance, plaintiff interprets *Lea Company v. North Carolina Board of Transportation*, 308 N.C. 603 (1983), to show that "an owner may bring a separate inverse condemnation when [NCDOT] takes additional property interests, even if a direct condemnation is proceeding." In *Lea Company*, NCDOT filed a complaint and declaration of taking for a part of the plaintiff company's property to be used for a highway improvement project. 308 N.C. at 607–08. After the parties signed a settlement agreement but a few days before the trial judge incorporated the agreement into a consent judgment, the company's remaining property flooded. *See id.* at 608. Several months later, the company filed an inverse condemnation action alleging that the highway improvement project had caused the flooding and had resulted in a separate taking of the company's property. *Id.* at 609. NCDOT argued in response that the company should have sought compensation for the flooding in the condemnation action pursuant to N.C.G.S. § 136-112(1). *Id.* at 631. In rejecting NCDOT's argument, this Court remarked that "[n]othing in . . . the statutes or our previous opinions . . . mandates that property owners must seek to recover compensation in the ongoing condemnation proceedings for a *subsequent further taking* by the State." *Id.* at 632–33 (emphasis added).

We do not see how *Lea Company* helps plaintiff. There, we expressly based our holding on the fact that the flooding occurred *after* NCDOT condemned a part of the company's land for a highway improvement project. In this case, the Map Act restrictions over which plaintiff filed his inverse condemnation claims were imposed

and well known to plaintiff years *before* NCDOT initiated the 2010 direct action. He was thus well positioned to raise them in that proceeding.

Similarly, this Court's decision in *City of Charlotte v. Spratt*, 263 N.C. 656 (1965), does little, if anything, to strengthen plaintiff's position. That case preceded the enactment of N.C.G.S. § 136-111 and was decided on common law principles.[6] *See* 263 N.C. at 661–62.

IV.

Section 136-106 mandated that plaintiff raise the issue of Map Act restrictions in NCDOT's 2010 direct action condemning part of his property. His failure to do so prevents him from pursuing damages for those restrictions through an inverse condemnation action under N.C.G.S. § 136-111. The judgment of the Court of Appeals is therefore reversed. We further conclude that discretionary review was improvidently allowed as to the remaining issues on appeal.

REVERSED; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART.

---

[6] Likewise, although the Court of Appeals relied on *Department of Transportation v. Bragg*, 308 N.C. 367 (1983), we do not find that case instructive here. In *Bragg*, NCDOT initiated a condemnation action to acquire part of the landowner's property for a highway construction project. 308 N.C. at 369. The construction led to flooding on the landowner's remaining property. *Id.* This Court held that the landowner should have been allowed to introduce evidence of water damage in the condemnation action. *Id.* Like *Lea Company*, *Bragg* is not on point inasmuch as it does not involve a claim for damages for a taking that occurred before NCDOT filed its complaint and declaration of taking.